IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| NORTH STAR TECHNOLOGY INTERNATIONAL LIMITED and NORTH STAR TECHNOLOGY LIMITED<br><br>Plaintiffs,<br><br>v.<br><br>LATHAM POOL PRODUCTS, INC.<br><br>Defendant. | No. 3:19-cv-00120-JRG-DCP<br><br>Judge J. Ronnie Greer<br><br>Magistrate Judge Debra C. Poplin |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

The present complaint by Plaintiffs North Star Technology International Limited and North Star Technology Limited (collectively "North Star") asserts that Latham Pool Products, Inc. ("Defendant") is selling a swimming pool that infringes U.S. Design Patent No. D791,966 ("D'966 Patent"). U.S. Design Patent No. D791,966 ("D'966 Patent") is titled "Swimming Pool." The D'966 Patent claims "[t]he ornamental design of a swimming pool, as shown and described" in the various figures of the D'966 Patent. The various figures include a perspective top view, side views, end views, and top and bottom views of a unitary pool shell.

Defendant's swimming pool alleged to be infringing North Star's D'966 Patent is a unitary fiberglass pool shell currently being commercialized under the name "Corinthian 16." Accordingly, as North Star's D'966 Patent claims the ornamental design for an entire pool shell and Defendant's allegedly infringing product is sold as a one-piece fiberglass pool shell, it should be readily apparent that the "article of manufacture" in the present case is Defendant's entire Corinthian 16 pool shell. Thus, North Star should be able to recover Defendant's entire profits from its sales of the Corinthian 16 pursuant to 35 U.S.C. § 289.

1

Apparently based on language from the Supreme Court's decision in *Samsung Elecs. Co. v. Apple Inc.*, 137 S. Ct. 429, 434 (2016) holding that "the term 'article of manufacture' [of 35 U.S.C. § 289] is broad enough to encompass both a product sold to a consumer as well as a component of that product," both of Defendant's experts have asserted that the "article of manufacture" should somehow be limited to the ledge, bench, and step features of Latham's Corinthian 16 pool shell. However, such an assertion is a legally and factually off-base attempt to limit the damages at issue in this case. In this regard, because the products/designs at issue are unitary fiberglass pool shells made from a mold, Latham's Corinthian 16 pool shell should be considered a single component product. Further, even if Latham's Corinthian 16 pool shell is considered a multi-component product, or the Court determines it to be necessary to apply a multifactor analysis in this case, the various factors used by courts to identify the "article of manufacture" each strongly favor North Star even if the Court were to view the evidence in a light most favorable to Defendant.

Accordingly, the Court should grant partial summary judgment to North Star as the only reasonable conclusion a jury could reach is that of Defendant's entire Corinthian 16 pool shell being the appropriate "article of manufacture" pursuant to 35 U.S.C. § 289.

I. **Factual Background**

   a. **The D'966 Patent**

On July 11, 2017, North Star's D'966 Patent issued to Plaintiff North Star Technology International Limited with the title "Swimming Pool." *See* Exhibit A. The D'966 Patent was subsequently assigned to Plaintiff North Star Technology Limited effective January 1, 2019. *See* Exhibit B. The D'966 Patent includes one claim as follows: "The ornamental design for a swimming pool, as shown and described." *See* Exhibit A. The D'966 Patent includes eight figures.

*Id.* The eight figures include varying views of the claimed design of the D'966 Patent, including a perspective top view, side views, rear views, a top view, and a bottom view. *Id.* The D'966 Patent describes the varying views as depicting a "swimming pool." *Id.* The D'966 Patent does not include any broken lines and/or unclaimed subject matter with respect to the swimming pool shown and described in the D'966 Patent. *Id.*

### b. The D'966 Patent Depicts a One-Piece Pool Shell

The swimming pool shown and described in the D'966 Patent is a one-piece pool shell. *Id.* FIG. 1 of the D'966 Patent depicts a perspective top view of the one-piece pool shell (which is reproduced below for convenience).



Defendant's expert, Mr. Harold Ray Phillips, Jr., also describes the D'966 Patent in his report as showing a pool shell. *See* Exhibit C, Defendant's Report of Harold Ray Phillips, Jr. on Non-Infringement and Invalidity of the North Star Patents, ¶ 33 ("The figures [of North Star's D'966 Patent] show a pool shell, including its interior and exterior, from several different viewpoints."); ¶ 67 ("Here, the patented designs are swimming pool shells…").

### c. The Complaint Asserts that Defendant is Selling an Infringing Fiberglass Swimming Pool

Plaintiffs' First Amended Complaint asserts that Defendant is selling a fiberglass swimming pool that infringes North Star's D'966 Patent. [Doc. 11] at 5-6, Count I. As explained

3

by Defendant's damages expert, "[f]iberglass pools are 'one-piece swimming pools' that are prebuilt from a mold in a factory and shipped to location." *Quoting* Exhibit D, Defendant's Expert Report of Lauren R. Kindler, pg. 12, § V(D)(24).

The one-piece fiberglass pool design that North Star asserts to infringe its D'966 Patent is "advertised [by Defendant] as Corinthian 16 under the Viking Pools brand, Solara under the Trilogy Pool brand, and Seahaven under the Blue Hawaiian brand." *Id.* at pg. 10, § VI(i)(21) (the Corinthian 16, Solara, and Seahaven being collectively referred to herein as the "Corinthian 16"). A top view and a side view of Defendant's Corinthian 16 (Figure 2 taken from Exhibit D, pg. 11) is reproduced below along-side comparative views from North Star's D'966 Patent for convenience.



**Figure 2**
Latham' Accused Corinthian 16 Model Fiberglass Pool Product Top Plan View and Side View[44]

FIG. 6 (rotated top view) and FIG. 3 (side view) of North Start's D'966 Patent

### d. Article of Manufacture Issue

In an attempt to limit the damages at issue in connection with Defendant's sales of its Corinthian 16 fiberglass pool shell, Defendant intends to assert that the "article of manufacture" covered by the D'966 Patent should be limited to certain features of the pool (i.e., ledge, bench, and step features) instead of the entire pool shell. *See* Exhibit C at ¶ 178 ("Under the facts of this case, it is my opinion that the article of manufacture is the ledge, bench, and step components of

4

the pool"); *see also* Exhibit D at pg. 5, § IV(11)(b) ("Based on discussions with Mr. Thom Richards (Latham's Designer and Draftsman – Fiberglass Division[)] and Mr. Harold Phillips, Jr. (Latham's technical expert), my review of North Star's description of the claimed patented design, and my review of Latham's fiberglass pool designs, I understand that the article of manufacture in this case is comprised of the ledge, bench, and step components of the pool.").

II. **Applicable Law**

   a. **Standard of Review**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Similarly, a motion for partial summary judgment is recognized as a useful pretrial tool that "serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issue of fact." *Quoting* Fed. R. Civ. P. 56(d) Advisory Committee Note (1946); *see also* Rule 56(a) Advisory Committee Note (2010) (making clear that "summary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense"). While "[i]dentifying the article of manufacture is generally for the jury[,]…summary judgment may be appropriate if there is no genuine dispute of material fact or if there is only one conclusion that a reasonably jury could reach." *Nordock, Inc. v. Systems, Inc.*, No. 11-cv-118, 2017 U.S. Dist. LEXIS 192413, at *17 (E.D. Wis. Nov. 21, 2017) (citations omitted).

When moving for summary judgement, the moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 254 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). While the Court views the evidence in a favorable light for the non-moving party (*Matsuchita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587, 106 S. Ct. 1348 (1986)), "the non-movant is not entitled to a

5

trial based merely on its allegations; it must submit significant probative evidence to support its claims." *Hopkins v. Sellers,* Case No. 1:09-cv-304, U.S. Dist. LEXIS 58980, *9-10 (E.D. Tenn. Jun. 2, 2011) (*citing* Celotex, 477 U.S. at 324). If the Court determines that the fact finder could not find in favor of the non-moving party based on the record, the Court should grant summary judgment. *Id.* at *10 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S. Ct. 2505 (1986).

    b. **Article of Manufacture**

        i. **35 U.S.C. § 289**

Design patents may be obtained for "any new, original and ornamental design for an article of manufacture." 35 U.S.C. § 171(a). 35 U.S.C. § 289 provides that an available remedy for design patent infringement is the infringer's total profits obtained from selling any "article of manufacture" that applies the patented design or any colorable imitation thereof. Thus, as recently stated by the Supreme Court in *Samsung Elecs. Co. v. Apple Inc.*, 137 S. Ct. 429, 434 (2016), determining a damages award under 35 U.S.C. § 289 involves two steps:

> First, identify the 'article of manufacture' to which the infringed design has been applied. Second, calculate the infringer's total profit made on that article of manufacture.

With respect to the first step, the Supreme Court in *Samsung* first made clear that, "[i]n the case of a design for a single-component product, such as a dinner plate, the product is the 'article of manufacture' to which the design has been applied." *Id.* at 432. The Supreme Court then acknowledged that, "[i]n the case of a design for a multicomponent product, such as a kitchen oven, identifying the 'article of manufacture' to which the design has been applied is a more difficult task." *Id.*

"The only question [resolved by the Court in *Samsung* was] whether, *in the case of a multicomponent product*, the relevant 'article of manufacture' must always be the end product sold

6

to the consumer or whether it can also be a component of that product." *Id.* at 434 (emphasis added). In resolving this sole question, the Court rejected a per se rule that the relevant article of manufacture is always the product sold to the consumer by holding that "the term 'article of manufacture' is broad enough to encompass both a product sold to a consumer as well as a component of that product." *Id.* at 435. However, the Supreme Court "decline[d] to lay out a test for the first step of the § 289 damages inquiry in the absence of adequate briefing by the parties." *Id.* at 436.

### ii. Method for Identifying the Article of Manufacture

In *Samsung* the United States as amicus curiae proposed a four-factor test for purposes of determining the article of manufacture:

(i) "the scope of the design claimed in the plaintiff's patent, including the drawing and written description;"
(ii) "the relative prominence of the design within the product as a whole;"
(iii) "whether the design is conceptually distinct from the product as a whole;" and
(iv) "the physical relationship between the patented design and the rest of the product," including whether "the design pertains to a component that a user can physically separate from the product as a whole," and whether "the design is embodied in a component that is manufactured separately from the rest of the product, or if the product can be sold separately."

Brief for United States as Amicus Curiae Supporting Neither Party, 2016 U.S. S. Ct. Briefs LEXIS 2322, *46-48, 2016 WL 3194218. While the Supreme Court did not reject or adopt the test, the United States District Court for the Northern District of California adopted and approved of the four-factor test on remand at least in that particular case. *Apple Inc. v. Samsung Elecs. Co.*, No. 11- CV-01846-LHK, 2017 U.S. Dist. LEXIS 177199 at *85, 2017 WL 4776443 (N.D. Cal. Oct. 22, 2017) ("Each factor helps the factfinder think through whether the patented design has been applied to the product as a whole or merely a part of the product…so the Court adopts these four factors as the test for determining the relevant article of manufacture for the purpose of § 289.").

7

Similarly, while stating its belief that "the four factors proposed by the United States [] will [not] always be the *only* factors relevant to determining the article of manufacture," the Eastern District of Wisconsin recently found "that the four-factor test proposed by the United States as amicus in *Samsung* is appropriate, consistent with the relevant statutory law, and supported by the case law." *Nordock, Inc. v. Systems, Inc.*, No. 11-cv-118, 2017 U.S. Dist. LEXIS 192413, *15-16, 2017 WL 5633114 (E.D. Wis. Nov. 21, 2017). As part of the four-factor test, the Court in *Nordock* found that "it would seem obvious that a significant factor would be *how* the product is manufactured." *Id.* at *16. In this regard, the court in *Nordock* acknowledged that "[t]he United States [in its amicus brief] repeatedly noted the significance of [how the product is manufactured] and perhaps intended it to be encompassed within its fourth factor regarding the physical relationship between the portion of the product to which the design applies and the whole product." *Id.* (*citing* Amicus, 2016 U.S. S. Ct. Briefs Lexis 2322 at *18, 48, 51, 53).

### iii. Burden of Establishing the Article of Manufacture

Both the Northern District of California in *Samsung* and the Eastern District of Wisconsin in *Nordock* held that (1) "plaintiff bears the burden of persuasion on identifying the relevant article of manufacture"; and (2) "plaintiff initially bears the burden of production on identifying the relevant article of manufacture." *Quoting Samsung,* 2017 U.S. Dist. LEXIS 177199 at *87; *see also Nordock*, 2017 U.S. Dist. LEXIS 192413, *7. However, both courts also found that, once "plaintiff satisfies the burden of production, the burden of production then shifts to the defendant to come forward with evidence of an alternative article of manufacture." *Id.*

## III. Argument
### a. No Multifactor Article of Manufacture Test is Needed in This Case as Defendant's Corinthian 16 Pool is a Unitary/Single Component Product

As noted above, the Supreme Court in *Samsung* first recognized that, "[i]n the case of a design for a single-component product, such as a dinner plate, the product is the 'article of manufacture' to which the design has been applied." *Samsung*, 137 S. Ct. at 432. On remand, the Northern District of California similarly stated that, "in the case of a unitary object such as a dinner plate, the object ***must*** be the relevant article of manufacture…" *Samsung,* 2017 U.S. Dist. LEXIS 177199 at *76-77 (emphasis added).

In the present case, while Defendant asserts that that its Corinthian 16 fiberglass pool shell includes different "components" such as the ledge, benches, and steps, these "components" are actually just different features within the same unitary pool shell. In this regard, as Defendant's own damages expert succinctly explains, "[f]iberglass pools are 'one-piece swimming pools' that are prebuilt from a mold in a factory and shipped to location." *Quoting* Exhibit D at pg. 12, § V(D)(24). Thus, Defendant's unitary Corinthian 16 fiberglass swimming pool shell is exactly the type of "single component product [where] the product is the 'article of manufacture' to which the design has been applied" as described by the Supreme Court. *Quoting Samsung*, 137 S. Ct. at 432. Further, there is no reasonable basis for asserting that Defendant's Corinthian 16 pool shell is somehow a multicomponent product just because it includes different molded features formed as part of the one-piece pool shell.

Accordingly, like the dinner plate example provided by the Supreme Court, the present case involves single component products. As a single component product, there is no reason to even conduct a multi-factor article of manufacture test with regards to Latham's Corinthian 16 pool shell. Similarly, as a single component product, there can be no genuine issue of material fact as to Defendant's entire Corinthian 16 pool shell being the proper 'article of manufacture' to which the design of North Star's D'966 Patent has been applied by Defendant in this case.

9

### b. Any Consideration of the Factors Used by Courts Requires the Defendant's Entire Pool Shell to be Identified as the Proper Article of Manufacture in this Case

While North Star acknowledges that there currently is no express test for determining the "article of manufacture" pursuant to 35 U.S.C. § 289 both the *Samsung* and *Nordock* decisions recognize the applicability of the four-factor test proposed by the United States as amicus curiae in the Supreme Court's *Samsung* decision. In addition to the four factors and/or as part of the fourth factor, the court in *Nordock* also found that "it would seem obvious that a significant factor would be *how* the product is manufactured." *Nordock,* 2017 U.S. Dist. LEXIS 192413 at *15. As explained below, and while North Star believes adoption of a particular multifactor test is not needed in this case because Latham's Corinthian 16 pool shell should be found to be a single component product, consideration of the four-factor test (with inclusion of "how the product is manufactured" being part of the fourth factor) makes clear that the only reasonable conclusion a jury could reach is that of Defendant's entire Corinthian 16 pool shell being the appropriate "article of manufacture" pursuant to 35 U.S.C. § 289.

### i. The scope of the design claimed in the plaintiff's patent, including the drawing and written description.

North Star's D'966 Patent is entitled "Swimming Pool." *See* Exhibit A. It claims the design of an entire swimming pool as shown and described in the figures of the D'966 Patent. *Id.* The figures of the D'966 Patent includes overhead, side, and end views of a unitary pool shell. *Id.* The D'966 Patent does not include any broken lines indicating unclaimed subject matter of the claimed design. *Id.; see* Manual of Patent Examining Procedure § 1503.02(II) ("Unclaimed subject matter may be shown in broken lines for the purpose of illustrating the environment in which the article embodying the design is used."). Thus, the scope of North Star's D'966 Patent includes the design of an entire swimming pool shell. *Compare Apple, Inc. v. Samsung Elecs. Co.*, 2012 U.S. Dist. LEXIS 105125, *21, 2012 WL 3071477 (N.D. Cal. July 27, 2012) ("The patentee

may indicate the claimed part of the design with the use of solid lines and may indicate the unclaimed, remaining article of manufacture with the use of broken lines.") (*citing Contessa Food Prods. Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1378 (Fed. Cir. 2002) ("If features appearing in the figures are not desired to be claimed, the patentee is permitted to show the features in broken lines to exclude those features from the claimed design, and the failure to do so signals inclusion of the features in the claimed design.").

Accordingly, this factor requires the article of manufacture to be identified as Latham's entire Corinthian 16 pool shell. At a minimum, this factor weighs strongly in favor of North Star.

### ii. The relative prominence of the design within the product as a whole.

Again, North Star alleges that Defendant's Corinthian 16 pool shell (i.e., the "product as whole") infringes the design of North Star's D'966 Patent. In other words, North Star alleges Defendant's Corinthian 16 pool shell applies North Star's patented design or a colorable imitation thereof. North Star is not requesting Latham's profits from sales of accessories sold with or incorporated into Latham's Corinthian 16 pool shell. Thus, the design alleged to be infringed is not only prominent within Defendant's Corinthian 16 pool shell, the Corinthian 16 pool shell design <u>is</u> synonymous with the product as a whole.

Accordingly, this factor requires the article of manufacture to be identified as Latham's entire Corinthian 16 pool shell. At a minimum, this factor also weighs strongly in favor of North Star.

### iii. Whether the design is conceptually distinct from the product as a whole.

As noted above, Defendant's Corinthian 16 pool design is synonymous with Defendant's Corinthian 16 pool shell (i.e., the "product as a whole"). Thus, similar to the second factor, this factor requires the article of manufacture in this case to be identified as Latham's entire Corinthian

16 pool shell because the product as whole is conceptually <u>indistinct</u> from the design. At a minimum, this factor also weighs strongly in favor of North Star.

        **iv.    The physical relationship between the patented design and the rest of the product.**

As explained above and acknowledged by Defendant's expert on damages, Defendant's Corinthian 16 is manufactured from a mold to produce a one-piece, unitary fiberglass pool shell. The present case does not pertain to any components that a user/purchaser can physically separate from Defendant's Corinthian 16 pool shell. Similarly, there are no components of the pool shell that can be sold separately or otherwise removed from the shell without destroying the product.[1]

Accordingly, this factor requires the article of manufacture to be identified as Latham's entire Corinthian 16 pool shell. At a minimum, this factor also weighs strongly in favor of North Star.

**IV.    Conclusion**

As explained above, any assertion by Defendant that the correct "article of manufacture" in this case should be limited to certain features of Defendant's Corinthian 16 pool shell is blatantly incorrect. The multi-component test discussed above relates to a situation where the infringing design is just one of many components of an end product. However, this case involves a unitary / single component product. Further, even if a multifactor test is used in this case, the only reasonable conclusion a jury could reach is that of Defendant's entire Corinthian 16 pool shell being the appropriate "article of manufacture."

---

[1] To the extent applicable, any physically separate components (i.e., pumps, filters, skimmers, covers, etc.) that may be included by Defendant within the sales price of its Corinthian 16 pool shell can be easily accounted for when calculating the Defendant's total profit made on the article of manufacture under the second step of determining a damages award under 35 U.S.C. § 289.

Dated: September 8, 2020					Respectfully submitted,

<div style="margin-left: 3em;">
/s/WadeROrr                              
Wade R. Orr – Tenn. Bar No. 27448
Michael J. Bradford – Tenn. Bar No. 22689
LUEDEKA NEELY GROUP, P.C.
900 S. Gay Street, Suite 1504
Knoxville, TN  37902
Telephone: (865) 546-4305
Facsimile: (865) 523-4478
WOrr@Luedeka.com

Attorneys for Plaintiffs
</div>

## CERTIFICATE OF SERVICE

  I hereby certify that a true and exact copy of the foregoing has been served on all counsel of record and parties via the Court's electronic filing system.


Dated: September 8, 2020                  /s/WadeROrr
                                    Wade R. Orr