IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

North Star Technology International Limited
and North Star Technology Limited,

Plaintiffs,

vs.

Latham Pool Products, Inc.

Defendant.

No. 3:19-cv-00120-JRG-DCP

Judge J. Ronnie Greer

Magistrate Judge Debra C. Poplin

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**

## I.    INTRODUCTION

Defendant Latham Pool Products, Inc. ("Latham") moves for summary judgment of non-infringement of U.S. Design Patent D791,966 (the "D'966 Patent").  Plaintiffs North Star Technology International Limited and North Star Technology Limited (collectively, "North Star") allege that Latham's Corinthian 16 swimming pool[1] infringes the D'966 Patent.[2]  There is no genuine dispute of fact on the issue of infringement.  The D'966 Patent, like all design patents, covers only the specific design shown in the patent's figures.  A simple visual comparison of the D'966 Patent's figures to the Corinthian 16 shows that the two designs are different.  Accordingly, no reasonable juror could conclude that the Corinthian 16 infringes the D'966 Patent.  As set forth below, North Star's claim fails as a matter of law for two independently-sufficient reasons.

---

[1] North Star accuses Latham's sixteen foot wide versions of its Corinthian, Seahaven, and Solara swimming pools of infringement.  (Dkt. 11, ¶¶ 17-24).  All three pools have the same design and are collectively referred to as the "Corinthian 16" herein.  (Latham's Statement of Undisputed Facts ("SUF") 5).

[2] North Star originally asserted U.S. Design Patent D 794,213 in addition to the D'966 Patent, but has since dismissed that claim.  (SUF 6).

Case 3:19-cv-00120-KAC-DCP    Document 65    Filed 09/08/20    Page 1 of 27    PageID #: 951

First, the appearance of the Corinthian 16 is "plainly dissimilar" from the design shown the D'966 Patent. The D'966 Patent figures show a swimming pool with linear, rectangular design elements, creating a geometric and angular overall appearance. The Corinthian 16 does not have linear or rectangular design elements or the same geometric and angular overall appearance as the D'966 Patent. Instead, the Corinthian 16 has curved design features and additional, distinct design features that differ significantly from the D'966 Patent. These differences would be immediately apparent to anyone viewing the two designs. This alone is fatal to North Star's claim.

Second, while the designs are plainly dissimilar, any similarities that do exist between the D'966 Patent and Corinthian 16 designs stem from their use of design elements that were commonly used in pool designs before the D'966 Patent, including earlier Latham pool designs. Conceptual similarities and general design concepts, however, are not sufficient to establish infringement. North Star cannot expand the scope of the D'966 Patent to prevent Latham from using common design elements that were already used by Latham and others in the industry well before North Star filed for its patent. Further, in light of the similar prior pool designs, the differences between the Corinthian 16 and D'966 Patent designs are that much more evident. Summary judgment is warranted for this additional reason.

## II.    BACKGROUND

### A.    The D'966 Patent

The scope of the D'966 Patent is limited to the specific design shown in its figures. *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988) ("Design patents have almost no scope. The claim at bar, as in all design cases, is limited to what is shown in the application drawings."). The D'966 Patent design is shown below in Figures 6 and 2, which are representative of the D'966 Patent's design:



D'966 Patent – Top and Side Views (Ex. 1)

Rectangular Steps

FIG. 6

Rectangular Benches and Rectangular Steps

Shallow Safety Ledge

Complete Rectangle Ledge

FIG. 2

As shown above, the D'966 Patent design is a rectangular pool with rectangular design features. (Ex. 1;[3] SUF 7, 10, 19, 29). The features in the shallow end are all rectangles. (Ex. 1; SUF 10, 19, 29). All of the steps are rectangles extending the full width of the pool. (Ex. 1; SUF 14, 18, 21, 23, 24). The entry step and the steps leading to the rest of the pool frame a rectangular ledge also extending the full width of the pool. (Ex. 1; SUF 18, 19, 21, 24). The rectangular steps leading to the rest of the pool are different sizes, with the top step being wider than the bottom step. (Ex. 1; SUF 21). The features in the deep end are also all rectangular. (Ex. 1; SUF 25, 27). The benches in the deep end are rectangular and box-like, with smaller rectangular, box-like steps stacked on top. (*Id.*). A safety ledge extends around the perimeter of the pool at the same level as the top surface of the shallow end ledge and top surface of the deep end benches. (Ex. 1; SUF 32).

---

[3] All exhibits cited herein are attached to the Declaration of Courtney Dabbiere in support of Defendant's Motion for Summary Judgment ("Dabbiere Decl."), filed concurrently herewith.

The resulting overall appearance of the D'966 Patent's pool design is rectangular and square-edged. (SUF 10-13).

### B. The Corinthian 16 Pool

While the Corinthian 16 has a tanning ledge, steps, a safety ledge, and deep-end benches, it does not have the *same* tanning ledge, steps, safety ledge, and deep-end bench designs as the D'966 Patent. (Ex. 36; SUF 15, 16, 20, 22, 26, 28, 31, 33, 34). The Corinthian 16 design is shown below:



Corinthian 16 – Top and Side Views (Ex. 9)

Curved Corner Entry Steps

Curved Benches

Safety Ledge

Steps With Curved Ends

Non-Rectangular Ledge

Curved Entry Step

The entry steps are located only in the corners of the shallow end and are not rectangles. (SUF 16). Instead, the entry corner steps are curved which creates a contrast with the full width steps between the tanning ledge and the rest of the pool. (Exs. 9, 13, 15; SUF 16, 18). Furthermore, the full width steps incorporate curved ends to soften the transition between the step and the pool wall. (Ex. 9). Also unlike the D'966 Patent, the full width steps in the Corinthian 16 are of equal size to one another. (Ex. 36; SUF 22).

4

The tanning ledge in the Corinthian 16 is not a complete rectangle because the incorporation of the curved entry steps creates curvature in the tanning ledge as well. (SUF 20).

The deep end benches of the Corinthian 16 are curved on the end and are much smaller than what is shown in the D'966 Patent. (Ex. 9, 36; SUF 28). The deep end benches also lack the "rectangular box on top of a rectangular box" look of the D'966 Patent's benches. (SUF 26). Further, the Corinthian 16's safety ledge is not at the same height as the full width steps and the deep end benches, but instead is positioned lower at a midway point of the deep end benches and terminating at the pool floor at the bottom of the full width steps. (Ex. 36; SUF 33, 34).

### C. Prior Art Designs Predating The D'966 Patent[4]

North Star acknowledges that rectangular pools with tanning ledges, steps, and/or deep-end benches were used in pool designs before the D'966 Patent was filed. (SUF 35-39). Indeed, numerous prior art designs show a rectangular pool with a rectangular tanning ledge (SUF 39):



Rectangular Pool with Rectangular Tanning Ledge

Rectangular pools with a rectangular tanning ledge and rectangular steps were also used in designs before the D'966 Patent was filed (SUF 40):

---

[4] Under 35 U.S.C. § 102, an inventor is entitled to a patent unless "the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention." Prior art is any such disclosure made before the effective filing date of the claimed invention.

5

| Rectangular Pool with Rectangular Tanning Ledge and Rectangular Steps |
| --- |



And, rectangular pools with rectangular tanning ledges and deep end benches were used in pool designs before the D'966 Patent was filed (SUF 41):

| Rectangular Pools with Rectangular Tanning Ledge and Deep End Benches |
| --- |



Even Latham was using tanning ledges, benches, and safety ledges in its designs before the application leading to the D'966 Patent was filed. (SUF 42-45). Indeed, the safety ledge and deep-end benches in the Corinthian 16 design are based on designs of features in earlier Latham pools, such as the Olympia and St. Thomas, which pre-date the D'966 Patent. (*Id.*).

6



## III. LEGAL STANDARD

### A. Summary Judgment Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating that no genuine issue of material facts exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may meet this burden by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

The non-moving party must affirmatively present competent evidence indicating the necessity of a trial for resolving a material, factual dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A mere scintilla of evidence is not enough. *Id.* at 252; *McLean v. 988011*

7

*Ont., Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 323.  If the Court concludes that a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment.  *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

### B.  Standard for Design Patent Infringement

"Determining whether a design patent has been infringed is a two-part test: (1) the court first construes the claim to determine its meaning and scope; (2) the fact finder then compares the properly construed claim to the accused design."  *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1341 (Fed. Cir. 2020) (citing *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995)).  For step one, the proper construction focuses on "what is shown in the application drawings."  *HR U.S. LLC v. Mizco Int'l, Inc.*, No. 07-2394 (CGT)(JO), 2009 WL 890550, at *9 (E.D.N.Y. Mar. 31, 2009) (citations omitted).  Courts need not provide a detailed verbal description of the claimed design, as the illustration of the design is its own best description. *See Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008) (en banc).

For step two, the "ordinary observer" test is used to determine whether an ordinary observer, giving such attention as a purchaser usually gives, would view the patented and accused designs to be "substantially the same . . . such as to deceive such an observer, inducing him to purchase one supposing it to be the other."  *Egyptian Goddess*, 543 F.3d at 670 (citing *Gorham Co. v. White*, 81 U.S. 511, 528 (1871)).  The focus of the ordinary observer test is on the overall ornamental visual impression, rather than "similarities of ornamental features in isolation." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015).  A proper comparison involves viewing the patent figures and accused design, considering both the overall

8

designs and ornamental differences to determine "the impact of the ornamental differences on the overall design."  *Lanard Toys*, 958 F.3d at 1343-44; *see also Minka Lighting, Inc. v. Maxim Lighting Int'l, Inc.*, No. 3:06-CV-995-K, 2009 WL 691594, at *6 (N.D. Tex. Mar. 16, 2009) ("The aggregation of these differences create a distinct overall visual impression and overwhelm the similarities between the designs.").

### C. Summary Judgment in Design Patent Cases

Summary judgment of non-infringement is particularly appropriate in design patent cases because of the very limited scope of protection afforded to design patents. The Federal Circuit has stated that "design patents have almost no scope beyond the drawings."  *Unidynamics Corp. v. Automatic Prods. Int'l Ltd.*, 157 F.3d 1311, 1323 (Fed. Cir. 1998); *see also Elmer*, 67 F.3d at 1577 (reversing denial of judgment of non-infringement as a matter of law because no reasonable jury could have found infringement).  Cases involving design patents "are relatively simple and the failure to grant summary judgment when otherwise appropriate would be an absurd waste of time." *Spalding & Evenflo Cos., Inc. v. Graco Metal Prods., Inc.*, No. 5:90CV0651, 1991 WL 148127, at *3 (N.D. Ohio, Mar. 1, 1991) (citations omitted).

### 1. Summary Judgment Is Warranted When the Patented and Accused Designs Are Plainly Dissimilar

Summary judgment of non-infringement is appropriate where the Court determines, based on its own comparison of the patent figures and accused design, that "the claimed and accused designs are 'sufficiently distinct' and 'plainly dissimilar.'"  *Ethicon*, 796 F.3d at 1335 (quoting *Egyptian Goddess*, 543 F.3d at 678).  Courts routinely grant summary judgment based solely on a visual comparison of the accused and patented designs.  *See, e.g.*, *HR U.S.*, 2009 WL 890550, at *13 (granting summary judgment of non-infringement, noting that "a visual comparison alone is sufficient to determine non-infringement under the ordinary observer test"); *McIntire v. Sunrise*

9

*Specialty Co.*, 944 F. Supp. 2d 933, 941-42 (E.D. Cal. 2013); *Competitive Edge, Inc. v. Staples, Inc.*, 763 F. Supp. 2d 997, 1011-1012 (N.D. Ill. 2010); *Minka*, 2009 WL 691594, at *8 (N.D. Tex. Mar. 16, 2009) ("because the two designs are plainly dissimilar and Plaintiff has not met its burden, the analysis requires no reference to the prior art.").

For example, in *McIntire v. Sunrise Specialty Co.*, 944 F. Supp. 2d 933 (E.D. Cal. 2013), the court granted summary judgment of non-infringement after comparing the patent drawings to images of the accused design, reproduced below.[5] *Id.* at 942.

| Patented Design | Non-Infringing Accused Design |
|---|---|
|  | |

The court noted three distinctions between the patented and accused designs: (1) the patented design had a row of beads under the toilet bowl rim that the accused design lacked, (2) the patented design had a more prominent "adams apple" at the front of the bowl, and (3) the patented design had a pedestal at its base with a "stepped descent" that the accused design lacked. *McIntire*, 944 F. Supp. 2d at 937. Based on these differences alone, the court held that the accused design could not be found to infringe, and granted summary judgment without needing to consider the prior art. *Id.* at 941-942.[6]

---

[5] These and other images of the patented and non-infringing designs from this case may be viewed in Defendant's brief in support of its motion for summary judgment, available at *McIntire*, 2012 WL 7678401.

[6] While not necessary, the court noted that examination of the prior art further highlighted the differences between the designs because the differences were "present in some prior art, and absent in others." *Id.* at 942.

Similarly, in *Minka Lighting, Inc. v. Maxim Lighting Intern., Inc.*, 2009 WL 691594 (N.D. Tex. 2009) the court granted summary judgment of non-infringement of design patents for lighting fixtures based on a visual comparison of the figures in the asserted patents to the accused designs, as shown below:

| Patented Designs[7] | Non-Infringing Accused Designs |
|---|---|
|  |  |

The court granted summary judgment of non-infringement after identifying differences between the designs, finding that the differences "would be seized upon by an ordinary observer, who would not be deceived into purchasing Defendants' products thinking they were Plaintiff's patented design." *Id.* at *8.[8]

**2.      Summary Judgment Is Also Appropriate When the Patented Design Is Close to Prior Art Designs**

Even if the claimed and accused designs are not "plainly dissimilar," summary judgment is still appropriate if the plaintiff fails to prove substantial similarity between the patented and accused designs when considered in the context of prior art designs. *Egyptian Goddess*, 543 F.3d at 678; *Ethicon*, 796 F.3d at 1337.   Prior art is examined "to identify differences that are not noticeable in the abstract but would be significant to the hypothetical ordinary observer familiar

_____

[7] Portions of the fixtures shown in broken lines are not part of the claimed design. *In re Zahn*, 617 F.2d 261 (C.C.P.A. 1980).

[8] This case involved three design patents, and the court granted defendants' motion for summary judgment of non-infringement on all three. *Id.* at *9.  For the '591 Patent, the court compared the patent and accused design only (shown above). *Id.* at *7-8.  For the '515 and the '052 Patents, the court determined found the patented and accused designs "readily distinguishable to an ordinary observer," but additionally compared the patents and accused designs to the prior art, as noted in the following section. *Id.* at *5-6, *8-9.

11

with the prior art." *Ethicon*, 796 F.3d at 1335. "[W]hen the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer." *Egyptian Goddess*, 543 F.3d at 676. Further, "[w]here the frame of reference consists of numerous similar prior art designs, those designs can highlight the distinctions between the claimed design and the accused design as viewed by the ordinary observer." *Id.* at 677.

For example, in *Lanard Toys Limited v. Dolgencorp LLC*, the Court affirmed summary judgment of non-infringement where the district court noted only small differences between the patented and accused designs, but found non-infringement when viewing the designs in the context of the prior art. 958 F.3d 1337, 1344-45 (Fed. Cir. 2020). While noting that the patented and accused designs "look quite similar" at a conceptual level, summary judgment was appropriate in view of the prior art because "the design similarities stem from aspects of the design that are either functional or well-established in the prior art." *Lanard Toys Limited v. Toys "R" Us-Delaware, Inc.,* 2019 WL 1204290 at *15-18 (M.D. Fl. March 21, 2019); *see also Minka*, 2009 WL 691594, at *6 ("Similar silhouettes or comparable contours between a patented and accused design can make them 'not plainly dissimilar,' thus counseling comparison with the prior art. Yet such general design concepts alone are insufficient to show infringement, particularly when the prior art is replete with similar designs." (internal citation omitted)).

Other courts have similarly granted summary judgment of non-infringement after comparing the patented and accused designs in context of the prior art. *See*, *e.g.*, *Arc'teryx Equip. Inc. v. Westcomb Outerwear, Inc.*, No. 2:07-CV-59 TS, 2008 WL 4838141, at *3 (D. Utah Nov. 4, 2008) (granting summary judgment of non-infringement based on court's visual comparison of patent, accused design, and prior art); *Rainworks Ltd. v. The Mill- Rose Co.*, 622 F. Supp. 2d 650,

656 (N.D. Ohio 2009) (granting summary judgment of non-infringement, noting that one notable "distinction alone precludes infringement under the ordinary observer test," but considering prior art "[n]evertheless"); *Minka Lighting*, 2009 WL 691594, at *7, *16 (finding non-infringement based on visual comparison of patent, accused design and prior art, holding that "no jury could reasonably find that Defendants' [designs] infringe Plaintiff's '515 patent").

## IV. ARGUMENT

Summary judgment of non-infringement is appropriate here because the overall design shown in the figures of the D'966 Patent is "plainly dissimilar" from the Corinthian 16 design. *Ethicon*, 796 F.3d at 1335. North Star has failed to offer any evidence that the ordinary observer— a homeowner purchasing a pool—would purchase one design supposing it to be the other under the ordinary observer test. Thus, because the designs are different, North Star cannot meet its burden of proving that the designs would appear "substantially the same" to the ordinary observer.

Moreover, even if the designs were not "plainly dissimilar" (which they are), Latham is still entitled to summary judgment because the differences between the accused design and D'966 design are even more apparent and significant in light of the prior art offered by Latham. *Egyptian Goddess*, 543 F.3d at 678 ("[D]ifferences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant with the prior art."). North Star has not offered any evidence to the contrary. *See Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1295 (Fed. Cir. 2010) ("The patentee must establish that an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design."). For this additional and independent reason, the Court should grant summary judgment of non-infringement.

## A. The Corinthian 16 is Plainly Dissimilar from the D'966 Patent

A simple comparison of the Corinthian 16 against the figures of the D'966 Patent shows there is no genuine dispute that the Corinthian 16 does not infringe. (*See* Ex. 36). The most obvious difference is the rectangular and squared-angle style of the D'966 Patent design as compared to the curved and radiused style of the Corinthian 16 design:



The D'966 Patent design has a modern, linear look with straight edges, sharp corners, and perpendicular angles that do not appear in the Corinthian 16. (SUF 10-13). To the contrary, the Corinthian 16 has a distinct, softer look with curved features, making the designs "plainly dissimilar." (Ex. 36; SUF 41). This distinction alone is sufficient to support a finding that the

14

D'966 Patent and Corinthian 16 are not "substantially similar." *See Richardson*, 597 F.3d at 1296 ("In a side-by-side comparison with the [claimed] design, the overall effect of this streamlined theme makes the [accused] tools significantly different from [the boxy claimed] design. Overall, the accused products clearly have a more rounded appearance and fewer blunt edges than the patented design."); *Ethicon*, 796 F.3d at 1336-37 ("[T]he most obvious difference between the claimed and accused designs [w]as 'the overall contoured shape' of the claimed design and the 'overall linear shape' of the accused design." (citation omitted)).

Moreover, the ornamental design of the features in the Corinthian 16 look different from those in the patented design. All of these differences come together "to create a substantially different overall ornamental appearance." *Dyson, Inc. v. SharkNinja Operating LLC*, No. 14-cv-779, 2018 WL 1906105, at *13 (N.D. Ill. Mar. 29, 2018); *see also Lee v. Dayton-Hudson Corp.*, 838 F.2d, 1186, 1188 (Fed. Cir. 1988) (rejecting contention "that the patent is perforce infringed by [an accused product] with that general configuration" and affirming non-infringement based on different "surface details"); *Minka*, 2009 WL 691594, at *6; *McIntire*, 944 F. Supp. 2d at 941-42. For example, the design, shape, and size of the entry steps and tanning ledges in the Corinthian 16 and D'966 Patent are different (SUF 14-20):



| D'966 Patent – Portion of Figure 6 (Ex. 1) | Corinthian 16 (Ex. 9) |
|---|---|

As shown above, the D'966 Patent design has one rectangular full-width entry step and a full-width tanning ledge that is a complete rectangle.[9]  (SUF 14, 19).  As explained by the inventor, these features within the pool are linear with squared-angles to create a clean and modern look. (SUF 10, 14, 19; Ex. 7 at 18:19-21 ("Q And, Mr. Pain, why did you want to create square corners in your rectangular pool? A For the look. It was a much cleaner look.")).  In contrast, the Corinthian 16 has two curved entry steps tucked into the corners of the pool and a tanning ledge that extends between the steps to the edge of the shallow-end.  (SUF 15, 16).  Due to the curved entry steps, the tanning ledge is also curved at the end of the pool, and thus not a complete rectangle.  (SUF 20).  There's no genuine dispute that the size, arrangement, and design of the Corinthian 16's

---

[9] The "tanning ledge" in the D'966 Patent is also referred to by the inventor as a "splash deck." (Ex. 7 at 27:17-21).

corner steps and tanning ledge create a distinct visual impression when compared to the D'966 Patent, as even the inventor of the D'966 Patent design recognizes:

> Q    Okay. And just so I understand your testimony, you also extended the entry step to be the width of the pool because that looked better to you as well; right?
>
> A    It did.
>
> Q    Okay.
>
> A    It looked more in balance with the other steps . . . if you're going to put your other steps all of the way across, then you might as well do the other one all of the way across to make it look more in balance.

(Ex. 7 at 64:21-65:6; *see also* SUF 17, 18).

The steps leading to the pool from the tanning ledge are also different between the designs. (SUF 21-24).



| D'966 Patent Portion of Fig. 6 (Ex. 1) | Corinthian 16 (Ex. 9) |
|---|---|

In the D'966 Patent, the top step is significantly wider than the bottom step, whereas the steps in the Corinthian 16 are the same size. (SUF 21, 22). The undisputed evidence shows these differences would be recognizable to the ordinary observer. (SUF 23, 24). This is not the only difference. The ends of the steps in the D'966 Patent are abrupt, while the Corinthian 16's steps

17

curve where they meet the wall. (Exs. 9, 36). Additionally, as noted above, all of the steps of the D'966 Patent are rectangular, whereas the Corinthian 16 uses some curved steps and some rectangular steps, such that the Corinthian 16 does not have the same overall rectangular theme that the D'966 Patent uses. (SUF 18, 23, 24).

Likewise, the deep end benches in the Corinthian 16 are plainly dissimilar from those in the D'966 Patent, and would be readily apparent to the ordinary observer as distinguishing the designs. *See Minka*, 2009 WL 691594, at *6. The D'966 Patent includes two rectangular box-like benches in the deep-end with smaller rectangular, box-like steps stacked on top of the benches. (SUF 25, 27). These benches are not found in the Corinthian 16. (SUF 26). Rather, the Corinthian 16 has two curved deep end benches, which are designed to follow the Latham style used in earlier pools and match the curve of the corner entry steps. (SUF 28). They are also much smaller than the benches in the D'966 Patent, and lack the "box on box" look of the D'966 Patent. (Ex. 36). The distinct appearances of the deep-end benches in the D'966 Patent and Corinthian 16 are shown below:



| D'966 Patent – Portion of Fig. 6 (Ex. 1) | Corinthian 16 (Ex. 9) |
|---|---|

18

| D'966 Patent – Portion of Figure 1 (Ex. 1) | Corinthian 16 (Ex. 9) |
|---|---|
|  | |

The location and size of the safety ledges are different among the two pool designs. (SUF 32-34). The safety ledge of the D'966 Patent design extends from the top surface of the deep end bench and terminates at the top surface of the tanning ledge (SUF 32), while the safety ledge in the Corinthian 16 is positioned much deeper in the pool, extending from a midway point of the deep end benches and terminating at the pool floor adjacent the bottom step. (SUF 33). There is no dispute that the location and size of the safety ledge distinguishes a design's appearance:

> Q    And why did you design the step ledge to be 20 inches from the top?
>
> A    So that it would – so that it would flow from other areas in the pool. Like it would flow on from the bench. It would flow on from the – either step or, in this case, the splash deck. Because it's just more a design feature that – you know, you wouldn't want it halfway between a step. It kind of looks not quite as nice. So you make it flow on at the same level around the pool. So you keep the bench and the splash deck at the same level, and it's connected by the step ledge. But that's really – you could put it anywhere you'd like, but we just happened to put it there. It looks good.

(Ex. 7 54:5-19; *see also* SUF 32).



| D'966 Patent – Fig. 1 (Ex. 1) | Corinthian 16 (Ex. 9) |
| D'966 Patent – Figure 2 (Ex. 1) | Corinthian 16 (Ex. 9) |

A comparison of the outside of the pool shells (also shown above) further demonstrates the differences among the designs. (Ex. 36). The outside of the pool shells are dictated by the designs of the features inside the pool. (SUF 29-30). As such, the design of the outside of the D'966 Patent pool shell is different from the design of the outside of the Corinthian 16 pool shell. (Ex. 36). Moreover, the Corinthian 16 is also covered with rectangular ribs (SUF 31), which are not present in the D'966 Patent design, and create a different ornamental appearance (Ex. 36).

The existence of these differences is not disputed and these differences are "distinguishing features that would be readily apparent to an ordinary observer." *Minka*, 2009 WL 691594, at *6. The differences in the designs identified above are precisely the kinds of design differences that courts find dispositive in granting summary judgment of non-infringement. *See, e.g.*, *Dyson, Inc.*, 2018 WL 1906105, at *12; *Minka*, 2009 WL 691594, at *6; *McIntire*, 944 F. Supp. 2d at 941-42. And, as noted above, courts have found non-infringement on summary judgment for designs that have more similarities than the D'966 Patent and the Corinthian 16:

- *McIntire*, 944 F. Supp. 2d at 937, 941-42 (granting summary judgment of non-infringement where design elements "give the toilet its distinctive ornamental design—the beads, the protruding Adam's Apple, and the stepped-down pedestal relate to the overall design. Accordingly, the absence of these critical design features from the accused bowl is fatal to plaintiff's infringement claim"):



| Patent Design | Non-Infringing Accused Design |

- *Minka Lighting*, 2009 WL 691594, at *5 (granting summary judgment of non-infringement where "the overall visual impressions are distinct, and it is readily apparent that an ordinary observer would not be confused" and "[t]here are several differences that would be readily apparent to an ordinary observer"):



| Patent Design | Non-Infringing Accused Design |

21

- *Rainworks*, 622 F. Supp. 2d at 656 (granting summary judgment where "the design shown in the drawings of the '068 patent includes a laterally trimmed bristle portion, and since this feature is absent in Defendants' brush, that distinction alone precludes infringement under the ordinary observer test"):



| Patent Design | Non-Infringing Accused Design |

For the foregoing reasons, a simple comparison of the D'966 Patent with the design of the Corinthian 16, without more, demonstrates that North Star cannot meet its burden of proving that the designs would appear "substantially the same" to the ordinary observer, and summary judgment is appropriate. *Ethicon*, 796 F.3d at 1337 ("there can be no genuine dispute that at the proper level of granularity, the claimed ornamental designs of the [d]esign [p]atent[] are, as a whole, plainly dissimilar from the ornamental design of [the alleged infringer's] accused [design]") (citation omitted).

### B. Summary Judgment Is Further Warranted in View of the Close Prior Art

While there is no need to consider the prior art because the claimed and accused designs are "plainly dissimilar," Latham is additionally entitled to summary judgment in view of the closeness of the prior art pool designs to the D'966 Patent. *See Egyptian Goddess*, 543 F.3d at 676 ("[W]hen the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer.").

22

At a general level, the D'966 Patent design is rectangular in overall shape with steps and a large tanning ledge in the shallow end, benches in the deep end, and a safety ledge extending between them. (*See* Ex. 1). All of these features were commonly used in pool designs before the D'966 Patent. (SUF 35-45). Thus, while the ordinary observer will recognize that both the D'966 Patent and Corinthian 16 share these common, general features, that "does not mean the ordinary observer will be deceived into believing they are the <u>same</u> design." *Lanard Toys*, 2019 WL 1204290, at *15 (emphasis in original). Instead, the similar prior art designs and design features "highlight the distinctions between the claimed design and the accused design" to the ordinary observer. *Egyptian Goddess*, 543 F.3d at 677. North Star has identified no evidence to the contrary. Thus, there is no issue of fact that the differences between the D'966 Patent and Corinthian 16 designs would be apparent to any ordinary observer familiar with the prior art pool designs.

Latham has identified to North Star several prior art rectangular pool designs including a rectangular tanning ledge and rectangular steps in the shallow end that are close in appearance to the D'966 Patent, including the following:



| D'966 Patent (Ex. 1) | Prior Art (Ex. 5) | Prior Art (Ex. 5) |
|---|---|---|

(SUF 40). In light of these similar designs, the ordinary observer would even more readily notice the differences between the D'966 Patent's design and the Corinthian 16, including the different entry steps, the different shaped tanning ledges, and the different steps into the shallow end among the two designs discussed in detail above. *Egyptian Goddess*, 543 F.3d at 677.

23

Latham has also identified to North Star several prior art rectangular pool designs including deep end benches:



| D'966 Patent (Ex. 1) | Prior Art (Ex. 5) | Prior Art (Ex. 5) |

(SUF 41). The D'966 Patent's unique rectangular "box on box" deep-end benches are a distinguishing feature of its design over such prior art designs. The ordinary observer would be drawn to the D'966 Patent's unique rectangular box on box deep end benches, which are not in the Corinthian 16. *Egyptian Goddess*, 543 F.3d at 676. The absence of these "box on box" deep-end benches in the Corinthian 16 would thus be readily apparent. *Lanard Toys*, 2019 WL 1204290, at *15. And the ordinary observer, when considering the D'966 Patent design, the Corinthian 16, and the prior art, would not find the accused and patented designs "substantially similar." *See Lanard.,* 958 F.3d at 1343; *Rainworks*, 622 F. Supp. 2d at 657; *Minka Lighting*, 2009 WL 691594, at *16.

Further, the Corinthian 16 uses the same curved deep end benches and safety ledges that Latham has been using in its pools designs prior to the filing of the D'966 Patent.

| Corinthian 16 (Ex. 9) | Olympia (Ex. 37) | St. Thomas (Ex. 39) |

24

(SUF 42). The ordinary observer would recognize that the Corinthian 16 and D'966 Patent each depart from the prior art pool designs in different ways. "Under the ordinary observer standard, a patented design that consists 'only of bringing together old elements with slight modifications of form' is not infringed by 'another who uses the same elements with his own variations of form . . . if his design is distinguishable by the ordinary observer from the patented design.'" *Minka*, 2009 WL 691594, at *6 (quoting *Zidell v. Dexter*, 262 F. 145, 146 (1920)). Here, the Corinthian 16 has a curved design of the steps, tanning ledge, and deep end benches while the D'966 Patent employs straight lines and sharp angles to create a linear design for the steps, tanning ledge, and deep end benches. (SUF 10-13, 46). These variations between the accused and patented design would be readily noticeable to the ordinary observer. *See Lanard Toys*, 2019 WL 1204290, at *17; *Minka*, 2009 WL 691594, at *6; *Egyptian Goddess, Inc.*, 654 F.3d at 674.

Accordingly, no reasonable fact finder could find that North Star has met its burden of showing that "an ordinary observer, taking into account the prior art, would believe the accused design **to be the same** as the patented design." *Egyptian Goddess*, 543 F.3d at 682 (emphasis added). For this additional and independent reason, the Court should grant summary judgment of non-infringement of the D'966 Patent.

## V.   Conclusion

For the foregoing reasons, Defendant Latham respectfully requests that the Court enter summary judgment that Latham does not infringe the D'966 Patent.

Respectfully submitted, this 8th day of September, 2020.

KILPATRICK TOWNSEND & STOCKTON LLP

/s/ Russell Korn
Russell Korn (*admitted pro hac vice*)
Michael Bertelson (*admitted pro hac vice*)

25

Courtney S. Dabbiere (*admitted pro hac vice*)
1100 Peachtree Street NE
Atlanta, GA 30309-4528
(404) 815-6500
RKorn@kilpatricktownsend.com
MBerterlson@kilpatricktownsend.com
CDabbiere@kilpatricktownsend.com

Megan Bussey (*admitted pro hac vice*)
1114 Avenue of the Americas
New York, New York 10036-7703
(212) 775-8700
MBussey@kilpatricktownsend.com

KRAMER RAYSON, LLP

William J. Carver, BPR #022718
P.O. Box 629
Knoxville, Tennessee 37901-0629
(865) 525-5134
wcarver@kramer-rayson.com

*Counsel for Defendant*

26

## <u>CERTIFICATE OF SERVICE</u>

       I certify that a true and exact copy of the foregoing has been served via the Court's electronic filing system on the following counsel of record:

                Wade Orr
                Michael J. Bradford
                LUEDEKA NEELEY GROUP P.C.
                900 S. Gay Street
                Suite 1504
                Knoxville, TN  37902
                worr@luedeka.com
                mbradford@luedeka.com

Dated: September 8, 2020      <u>/s/ Russell Korn</u>
                                     KILPATRICK TOWNSEND & STOCKTON LLP
                                     1100 Peachtree Street NE
                                     Atlanta, GA 30309-4528
                                     (404) 815-6500
                                     rkorn@kilpatricktownsend.com