UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

NORTH STAR TECHNOLOGY )
INTERNATIONAL LIMITED and )
NORTH STAR TECHNOLOGY LIMITED, )
)
Plaintiffs, )
) No. 3:19-CV-120-KAC-DCP
v. )
)
LATHAM POOL PRODUCTS, INC., )
)
Defendant. )

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court,

and Standing Order 13-02.[1]

Now before the Court is Plaintiffs' Motion to Exclude Defendant's Purported Expert

Harold Ray Phillips Jr.['s] Opinion Testimony ("Motion to Exclude Phillips") [Doc. 46] and

Motion to Exclude Report of Lauren Kindler [Doc. 48]. The parties appeared before the Court on

October 19, 2020, for a hearing pursuant to *Daubert v. Merrell Dow Pharma., Inc.*, 509 U.S. 579

(1993) ("*Daubert* hearing"). Attorney Wade Orr appeared on behalf of Plaintiffs. Attorneys

Russell Korn, Courtney Dabbiere, Michael Bertelson, and William Carver appeared on behalf of

Defendant. Defendant presented testimony from its expert, Harold Phillips.

As an initial matter, during the hearing, Plaintiffs stated that their Motion with respect to

Lauren Kindler challenged her opinion on the proper article of manufacturer. Plaintiffs explained

that in Defendant's Response, Defendant clarified that Lauren Kindler relied on Harold Phillips's

---

[1] On December 20, 2020, the case was reassigned from United States District Judge Ronnie
Greer to United States District Judge Katherine A. Crytzer. [Doc. 93].

opinion in determining the article of manufacturer and that Lauren Kindler was not asked to determine the article of manufacturer. Plaintiffs stated that given Defendant's representation in its Response, they do not object to Lauren Kindler's testimony. Therefore, based on Plaintiffs' representation, the Court **DENIES AS MOOT** Plaintiffs' Motion to Exclude Report of Lauren Kindler [**Doc. 48**].[2] Further, for the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion to Exclude Defendant's Purported Expert Harold Ray Phillips Jr.['s] Opinion Testimony [**Doc. 46**].

## I. BACKGROUND

The Court will first begin with the allegations in the Amended Complaint and then turn to the challenged opinion.[3]

### A. Amended Complaint

This action arises over a design patent dispute.[4] Specifically, Plaintiffs allege that Defendant has infringed on their U.S. Design Patent No. D791,966 (the " '966 Patent" or the

---

[2] While the Court has ultimately excluded Harold Phillips's legal conclusion on the article of manufacturer, such does not equate to a finding that Lauren Kindler's third calculation regarding disgorgement is irrelevant or otherwise precluded. As further discussed below, the undersigned does not need to determine the article of manufacture at this instance. Therefore, determining whether Lauran Kindler's third calculation is relevant or otherwise excluded is premature at this time.

[3] Given that the issues with Lauren Kindler's opinion have been resolved, the Court will not address her opinion herein.

[4] On June 18, 2020, the parties filed a Stipulation of Dismissal Without Prejudice of Plaintiffs' Count II and Defendant's Counterclaim II [Doc. 58]. Count II of the Amended Complaint and Defendant's Counterclaim II involved claims arising from Plaintiffs' U.S. Design Patent No. D794,213 (the " '213 Patent"). [*Id.*]. Thus, the issues involving the '213 Patent have been resolved, and the Court will not address the allegations in the Amended Complaint or Harold Phillips's opinion regarding the '213 Patent. *See also* [Doc. 46 at 2 n. 1] (Plaintiffs' Motion to Exclude Phillips) (explaining that Harold Phillips's opinion with respect to Patent '213 is no longer relevant).

2

"North Star Patent"). [Doc. 11 at ¶ 2]. The North Star Patent is licensed exclusively to Leisure Pools and Spas Manufacturing North America Inc. ("Leisure Pools"), and it protects Leisure Pools' The Pinnacle™ fiberglass pool design and covers the ornamental design for the swimming pool as shown and described in the North Star Patent. [*Id.* at ¶¶ 2, 10].

The Amended Complaint alleges that in or about late 2018, Defendant began marketing a "Rectangle with Full Width Tanning Ledge" fiberglass pool design as being available beginning March 1, 2019. [*Id.* at ¶ 14]. On November 16, 2018, Plaintiffs notified Defendant by letter that Defendant's proposed "Rectangle with Full Width Tanning Ledge" design infringed the '966 Patent. [*Id.* at ¶ 15]. Plaintiffs requested that Defendant take any necessary steps to avoid infringement of Plaintiffs' design. [*Id.*]. The Amended Complaint avers that despite Plaintiffs' November 16 letter, Defendant continued with its plans and currently manufacturers and offers for sale its "Rectangle with Full Width Tanning Ledge." [*Id.* at ¶ 16].

The Amended Complaint alleges that Defendant has infringed on the North Star Patent in violation of 35 U.S.C. §§ 271 and 289, *see* [*Id.* at ¶¶ 19, 27], and requests the following relief: (1) a declaration that the '966 Patent is valid and enforceable; (2) a judgment pursuant to 35 U.S.C. § 271 that Defendant has infringed the North Star Patent; (3) an award of damages pursuant to 35 U.S.C. § 284 adequate to compensate Plaintiffs for Defendant's infringement of the North Star Patent, in an amount no less than a reasonable royalty for the use made of the invention, together with interests and costs; (4) an award of Defendant's total profits pursuant to 35 U.S.C. § 289 from the sales of its infringing pool design; (5) an order under 35 U.S.C. § 283 permanently enjoining Defendant from continued infringement of the North Star Patent; and (6) an award of enhanced damages pursuant to 35 U.S.C. § 284, including attorney's fees and expenses pursuant to 35 U.S.C. § 285 for Defendant's willful, wanton, and deliberate acts of infringement. [*Id.* at 8].

The Court will now turn to Harold Phillips's opinion.

**B.     Harold Phillips's Opinions**

Defendant retained Harold Phillips ("Phillips") to testify as an expert.  Phillips is technical consultant, who opines on issues relating to non-infringement and validity and also provides an opinion on the proper article of manufacturer.  [Doc. 46-1 at ¶¶ 1, 16, 178].  Specifically, Phillips is a designer and builder of custom swimming pools, spas, and other forms of aquatic architecture and has three decades of experience as an innovator and educator in the field of pool design.  [Doc. 46-1 at ¶ 17].[5]  Relevant to the instant matter, Phillips submitted an expert report opining as follows:

> 5. It is my opinion that Latham does not infringe the North Star Patents.
>
> 6. The North Star '966 Patent does not cover the Corinthian 16 Pool.
>
> 7. The North Star '966 Patent's design is very distinct and plainly dissimilar from the Corinthian 16 Pool's design.  The Corinthian 16 Pool's design is not substantially the same as the North Star '966 Patent's design.
>
> 8.  While it is plain that these designs are distinct and dissimilar from one another by simply comparing the two designs, I note that my conclusions are further supported by the fact that the North Star '966 Patent's design is similar to several earlier pool designs predating the patent's filing.
>
> 9. I further note that any similarities in appearance between the North Star '966 Patent's design and the Corinthian 16 Pool's design are due to general functional similarities between the two pools, and

_____

[5] The Court will not describe Phillips's qualifications to serve as an expert in detail because Plaintiffs have not challenged Phillips's expertise.  Instead, as more fully explained below, Plaintiffs argue that because of Phillips's qualifications, he cannot render an opinion as an "ordinary observer."  *See* [Doc. 55-1 at 5] (Exhibit A to Plaintiffs' Reply) ("Plaintiffs do not dispute in this case that Phillips is qualified as an expert.  Instead, him being an 'expert' is the very reason Plaintiffs seek to exclude his opinions on infringement under the ordinary observer standard.").

4

that the ornamental appearance of these two designs are quite different.

*     *     *

14. It is further my opinion that, to the extent that the scope of the North Star Patents could be construed so broadly as to cover the Latham Pools, then the North Star Patents would necessarily be invalid as either not new or not non-obvious over earlier pool designs identified in this report.

[Doc. 46-1].

In his expert report, Phillips states that design patent infringement and validity is gauged from the viewpoint of the ordinary observer or ordinary purchaser. [*Id.* at ¶ 66]. He submits that an "ordinary observer" will usually be a homeowner who is considering purchasing and installing a swimming pool. [*Id.* at ¶ 67]. Phillips states that the ordinary purchaser of a swimming pool will consider his or her decision very carefully and will closely inspect the various options on the market, paying close attention to, among other things, the various design features and aesthetics of each pool since he/she will likely be living with that decision for many years. [*Id.* at ¶ 69]. Phillips reviewed photographs of the Corinthian 16 Pool and opined as follows:

[A]lthough the Corinthian 16 Pool is functionally and conceptually similar to the North Star 966 Patent's design, the Corinthian 16 Pool has a very different design aesthetic. The steps leading down to the tanning ledge of the Corinthian 16 Pool are small, rounded, and discretely tucked into the corners of the pool. Similarly, the deep end benches of the Corinthian 16 Pool are rounded over to blend into the adjacent pool walls. The Corinthian 16 Pool's deep end benches are also smaller than the benches of the North Star 966 Patent and completely lack the additional steps on top of the benches in the North Star 966 Patent. Finally, the location and configuration of the safety ledge in the Corinthian 16 Pool makes it a much more prominent part of the pool's overall aesthetic.

[*Id.* at ¶ 72].

Phillips opined that there are many examples of similar pool designs that predate the North Star Patent. [*Id.* at ¶ 76]. Phillips states that tanning ledges, spas, and swim-out benches are common design features in many pool designs and that he has been designing pools with such features for decades. [*Id.* at ¶ 79]. Phillips provides several examples of earlier pool designs that he opines have similar overall appearances and/or specific design features to either the North Star Patent or Defendant's pools. [*Id.* at ¶ 82]. Specifically, he reproduces several images of pools from various websites and patents and comments on the pools' designs. [*Id.* at ¶¶ 83-140].

Next, Phillips compares the '966 Patent with the Corinthian 16 Pool's design and opines that "the two designs are very distinct and plainly dissimilar from each other." [*Id.* at ¶ 141]. Specifically, he opines as follows:

> 142. An ordinary observer of these two pool designs, giving a level of attention that a purchaser would usually give, would clearly not consider the two designs to be substantially the same. The Corinthian 16 Pool does not embody the North Star '966 Patent's design. The Corinthian 16 Pool is not a colorable imitation of the North Star 966 Patent's design. There are prominent visual differences between the two designs that would be immediately noticeable to a purchaser viewing the two designs.
>
> 143. The North Star '966 Patent and the Corinthian 16 Pool share some broad design concepts due to their functional similarities. They are both rectangular, and both have a full-width tanning ledge in the shallow end and benches in the deep end. However, these broad design concepts are implemented in very different ways such that the two designs have very different appearances.
>
> 144. The Corinthian 16 Pool has several differences from the North Star '966 Patent, including: smaller, quarter-round steps at the corners of the tanning ledge; uniform steps between the tanning ledge and rest of the shallow end; smaller, rounded over, single level deep end benches; a different safety ledge design; different overall proportions; and a different exterior shape and features.

[*Id.* at ¶¶ 142-44].

In his report, Phillips continues to describe the differences in the pool designs, stating that the "two designs have significantly different appearances that would be readily apparent to the ordinary observer." [*Id.* at ¶ 148]. For instance, Phillips opines that the " '966 Patent's design has an overall appearance that is much more rectilinear and angular than the Corinthian 16 Pools design." [*Id.*]. Phillips states that the entry features in the '966 Patent are "extremely rectilinear and angular," while Defendant's design contains curved entry features. [*Id.*] Phillips explains that the difference in entry features is "significant" because such "features are some of the most visually prominent features of just about every backyard pool." [*Id.*].

In addition, Phillips opines that "[t]he appearance of the deep end benches of the two designs are also polar opposites." [*Id.* at ¶ 151]. He explains that the deep end benches of the '966 Patent are rectilinear, angular, and multi-level, while the deep end benches of the Corinthian 16 Pool are curved to blend in with the overall pool and single level. [*Id.*]. Phillips states that the deep end benches of the '966 Patent are also proportionally larger than those of the Corinthian 16 Pool, which means "that the benches of the patented design stand out even more so than the benches of the Latham design in the overall appearance of the design." [*Id.*]. Phillips concludes, "This difference alone would be a significant difference between the two designs for the ordinary purchaser." [*Id.* at ¶ 152].

Further, Phillips states that the functional safety ledge in the pools' walls are different. [*Id.* at ¶ 153]. He explains that the functional safety ledge in the pools are implemented in different ways, "resulting in another prominent visual distinction between the two designs' overall appearances." [*Id.*]. He states that in the '966 Patent, the safety ledge is located at the level of the tanning ledge and the main level of the deep end benches, which makes it not as visually noticeable. [*Id.*]. In the Corinthian 16, however, Phillips states that the safety ledge is located

much deeper and is separated from the top level of the bench, which makes it more visually prominent. [*Id.*]. Finally, Phillips notes that the exteriors of the pools are different although this feature is less important given that it is not visible after installation. [*Id.* at ¶ 154]. Phillips concludes:

> 155. In short, while there are some general functional design similarities based on the pools being similar from a functional standpoint (both are rectangular, both have shallow-end tanning ledges and deep-end benches), the appearance of the two designs are quite different, and would be immediately noticeable to any potential pool purchaser. The two designs are clearly not substantially the same.

[*Id.* at ¶ 155].

With respect to invalidity, Phillips states that there are many examples of similar pool designs that predate the North Star Patent. [*Id.* at ¶ 76]. He opines:

> [I]t is my opinion that that the North Star Patent[] [does] not cover the Latham Pools, as the Latham Pools are distinct and plainly dismissal from the North Star Patent['s] design[n]. As also discussed in detail above, there are also many similar designs to the North Star Patent[] in the prior art. To the extent that the scope of the North Star Patent[] could be construed so broadly as to cover the Latham Pools, then the North Star Patent[] would necessary be invalid as either not new or nonobvious over earlier pool designs.

[*Id.*].

Finally, in his report, Phillips states that damages in a design patent case may be assessed using the "article of manufacture. [*Id.* at ¶ 178]. He explains that the "article of manufacturer can be the entire product sold to a consumer or a component of that product, depending upon the facts of the case." [*Id.*]. Here, he concludes that the article of manufacture is the ledge, bench, and step components of the pool. [*Id.*]. Phillips explains that rectangular pools were well known prior to the '966 Patent, and therefore, Plaintiffs cannot claim that the '966 Patent covers rectangular pools in general. [*Id.* at ¶ 179]. He concludes:

8

180. The '966 Patent claims a rectangular pool having certain components, including the ledge, bench, and step components shown in the figures of the [P]atent, and North Star alleges that the Corinthian 16 Pool, which includes ledge, bench, and step components (although having a different appearance than the '966 Patent) of infringing the '966 Patent.

181. Therefore, it is my opinion that the article of manufacture for the Corinthian 16 Pool is that pool[']s ledge, bench, and stop components.

[*Id.* at ¶¶ 180-81].

As mentioned above, Phillips also testified at the *Daubert* hearing. During direct examination, Phillips testified that he started working in the swimming pool industry in 1975. In 1979, he began designing and building pools, which ultimately led to him being recognized in the Robb Report as the "most influential pool designer in the world." Phillips testified that there are three main parts to a pool: structure, mechanics, and the cosmetics. He stated that communication with clients is important so that the structure, mechanics, and cosmetics of a pool do not conflict with one another. He explained that most of his work with fabricated pools involves communications with dealer networks in order to influence and provide instructions on pool designs.

Phillips testified that a pool is simply a vessel with a hole in it containing water. He explained, however, that a pool has many details, such as steps, benches, and access points. Phillips stated that in his expert report, he tried to address the different details and explain why such details are important. Phillips stated that prior to writing his report, he reviewed a number of pool images, including his own pool designs. He explained that many of the features of Plaintiffs' pools were features of pools already in existence. For instance, he stated that with respect to the tanning ledge, he found that a tanning ledge was designed in a pool in 1985 by his firm. He

testified that he was not trying to undermine Plaintiffs' '966 Patent, but instead, he wanted to point out the differences that the ordinary observer would see.

Phillips stated that he compared the '966 Patent figures to Defendant's pools and found that the access shelves are distinctly opposite. Further, he stated that he included prior art in his expert report to show the similarities among many pools. He testified that his opinion in this case is helpful because people do not have the ability to deconstruct and look at the details.

On cross examination, Phillips testified that he compared Defendant's pool designs to Plaintiffs' pool designs. He stated that he reviewed multiple examples of similar details to the parties' pools. Phillips explained that he compared the parties' pools with earlier pools, and they all had common features as well as differences. For instance, he explained that the parties' pools both had benches, but the benches are designed differently, making them functionally and visionally different. He stated that when he works with clients, such details are fundamental.

On redirect examination, Phillips testified that when he compared Plaintiffs' design with Defendant's design, his experience with consumers factored into his opinion regarding ordinary observers. He explained that he has spent forty-one (41) years working with clients and that such consultations are fundamental to the design process.

## II. POSITIONS OF THE PARTIES

Plaintiffs move [Doc. 46] to exclude the opinions and testimony of Phillips. First, Plaintiffs challenge Phillips's comparison of the '966 Patent to Defendant's Corinthian 16 pool design and Phillips's accompanying opinion of non-infringement. Plaintiffs assert that Phillips's comparison of the designs and accompanying opinions on non-infringement should be excluded under Rule 702 as irrelevant, unreliable, and/or of no assistance to the jury because Phillips is not an ordinary observer or purchaser. Further, Plaintiffs state that pool designs are not overly technical or

10

sophisticated and that the jury can determine the similarities between the pools under the ordinary observer test. In addition, Plaintiffs state that pursuant to Rule 403, Phillips's comparison and opinion on non-infringement is unfairly prejudicial in light of his design expertise.

Second, Plaintiffs claim that Phillips's opinion on invalidity should be excluded because he fails to provide any substantive analysis in violation of Rule 26(a)(2)(B)(i). In addition, Plaintiffs argue that Phillips's opinion is based on an incorrect legal standard.

Lastly, Plaintiffs claim that Phillips's opinion regarding the article of manufacture should be excluded because it is conclusory and is based on an incorrect legal standard. Specifically, Plaintiffs state that the appropriate article of manufacture is the entire pool, but Phillips opined that the article of manufacture in the '966 Patent is the ledge, bench, and step components of the pool. Additionally, Plaintiffs state that Phillips's opinion on the proper article of manufacture presents a significant danger of unfair prejudice because design patent infringement must be considered in the context of the patented design as a whole and not individual components.

Defendant responds [Doc. 50] that courts routinely recognize design experts, such as Phillips, as having the appropriate qualifications to testify in design patent cases on how an ordinary observer would perceive the designs at issue. Defendant asserts that Phillips's expertise in swimming pool designs does not disqualify him from opining on how an ordinary observer would perceive the pool designs at issue. Defendant states that, instead, Phillips is qualified to express a viewpoint of an ordinary observer based on his experience working with the ordinary observer and that Phillips correctly applied the ordinary observer test for his non-infringement opinion. Further, Defendant argues that courts have long heard expert testimony on the ultimate issue of design patent infringement.

In addition, Defendant argues that Phillips's opinions with respect to invalidity are admissible. Defendant states that typically, design patents are claimed as shown in the drawings. Thus, Defendant asserts that Phillips's depictions of the drawings shown in the '966 Patent vis-à-vis the drawings as shown in the prior art are admissible. Further, Defendant states that Phillips's report identifies all the prior art that Phillips considered in rendering his opinion. Defendant argues that Plaintiffs' challenges to Phillips's opinions on validity go to the weight of such opinions and not to their admissibility.

Finally, Defendant states that Phillips properly opined on the article of manufacture and that a disagreement with his opinion is not a basis to exclude it. Defendant argues that the Supreme Court has rejected the argument that the article of manufacture only encompasses entire finished products sold to consumers. Defendant submits that Phillips's testimony will assist the fact finder in identifying the article of manufacture. Defendant maintains that Phillip's opinions regarding non-infringement properly assess the claimed designs, accused designs, and the prior art designs according to the appropriate legal standards.

Plaintiffs reply [Doc. 55] that Defendant mischaracterizes the case law, arguing that courts routinely exclude an expert's testimony that opines on the ultimate issue of infringement. Plaintiffs state that the subject matter is not technical or sophisticated, and therefore, expert testimony will be of no assistance. Further, Plaintiff argues that Phillips's opinion on non-infringement should be excluded because he is an expert and not an ordinary observer.

With respect to Phillips's invalidity opinion, Plaintiffs state that he fails to conduct any analysis under the applicable legal standards related to invalidity. Specifically, Plaintiffs assert that Phillips fails to allege any asserted prior art design, or combination of asserted prior art designs, as being the same or substantially the same as the design of the '966 Patent or Defendant's

12

Corinthian 16 pool design. Plaintiffs maintain that Phillips's opinion on validity does not meet the requirements provided in Rule 26(a)(2)(B)(i). Finally, Plaintiffs state that Phillips's opinion on the article of manufacture is incorrect and not based on actual or proper analysis.

Both parties filed supplemental briefs. Specifically, Plaintiffs filed their supplemental brief [Doc. 80] to call the Court's attention to testimony that occurred after their final brief was filed.[6] Specifically, Plaintiffs maintain that Phillips's comparison and ultimate opinions on non-infringement improperly focus on differences without an understanding of the applicable legal standards. Further, Plaintiffs argue that Phillips's invalidity opinion is made without an understanding of the applicable legal standards and is in direct conflict with his deposition testimony. Finally, Plaintiffs reiterate that Phillips's opinion regarding article of manufacture is made without an understanding of the applicable legal standard and is in direct conflict with his deposition testimony.

Defendant responds [Doc. 86] that Plaintiffs' supplemental brief seeks to impose additional requirements for admissibility of expert testimony—that is, the expert must be an expert in the law. Defendant argues that Phillips's non-infringement analysis is properly based on the overall appearance of the pool designs. Further, Defendant states that Plaintiffs' assertions that Phillips does not understand the intricacies of the law relating to design patent invalidity and the article of manufacturer are irrelevant.

---

[6] Plaintiffs' Supplemental Brief cites to Phillips's deposition that was taken on July 29, 2020. Plaintiffs state that they received the transcript on August 19, 2020, and Phillips's errata sheet on September 22, 2020, which was after the Motion to Exclude Phillips had been briefed. [Doc. 80-1 at ¶ 2].

13

## III.  STANDARD OF REVIEW

"Federal Rule of Evidence 702 obligates judges to ensure that any scientific testimony or evidence admitted is relevant and reliable."  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharma., Inc.*, 509 U.S. 579, 589 (1993)).  Specifically, Rule 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In *Daubert,* the Supreme Court of the United States stated that a district court, when evaluating evidence proffered under Rule 702, must act as a gatekeeper, ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable."  509 U.S. at 589.  The *Daubert* standard "attempts to strike a balance between a liberal admissibility standard for relevant evidence on the one hand and the need to exclude misleading 'junk science' on the other."  *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 176–77 (6th Cir. 2009).

The factors relevant in evaluating the reliability of the testimony, include: "whether a method is testable, whether it has been subjected to peer review, the rate of error associated with the methodology, and whether the method is generally accepted within the scientific community."

14

*Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 970-71 (M.D. Tenn. 2002) (citing *Daubert*, 509 U.S. at 593–94). The Rule 702 inquiry is "a flexible one," and the *Daubert* factors do not constitute a definitive checklist or test. *Kumho Tire Co.*, 526 U.S. at 138-39 (citing *Daubert*, 509 U.S. at 593); *see also Heller v. Shaw Indus., Inc.,* 167 F.3d 146, 152 (3d Cir. 1999) (explaining that these factors "are simply useful signposts, not dispositive hurdles that a party must overcome in order to have expert testimony admitted").

"Although *Daubert* centered around the admissibility of scientific expert opinions, the trial court's gatekeeping function applies to all expert testimony, including that based upon specialized or technical, as opposed to scientific, knowledge." *Rose v. Sevier Cty., Tenn.*, No. 3:08-CV-25, 2012 WL 6140991, at *4 (E.D. Tenn. Dec. 11, 2012) (citing *Kumho Tire Co.*, 526 U.S. at 138-39). "[A] party must show, by a 'preponderance of proof,' that the witness will testify in a manner that will ultimately assist the trier of fact in understanding and resolving the factual issues involved in the case." *Coffey*, 187 F. Supp. 2d at 70-71 (quoting *Daubert*, 509 U.S. at 593-94). The party offering the expert has the burden of proving admissibility. *Daubert,* 509 U.S. at 592 n. 10.

Moreover, the Supreme Court has explained that in determining "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact," the court must assess "whether the reasoning or methodology underlying the testimony is scientifically valid and whether it can properly be applied to the facts in issue." *Id.* at 592–93. "Furthermore, the court must examine the expert's conclusions in order to determine whether they can reliably follow from the facts known to the expert and the methodology used." *In re Diet Drugs*, No. MDL 1203, 2001 WL 454586, at *7 (E.D. Pa. Feb. 1, 2001) (citing *Heller,* 167 F.3d at 153).

Further, a court should "exclude proffered expert testimony if the subject of the testimony lies outside the witness's area of expertise." *In re Diet Drugs*, 2001 WL 454586, at *7 (quoting 4

15

Weinstein's Fed. Evid. § 702.06[1], at 702–52 (2000)).  This simply means that "a party cannot qualify as an expert generally by showing that the expert has specialized knowledge or training which would qualify him or her to opine on some other issue." *Id.*  (other citations omitted).

Finally, "the court will not exclude expert testimony merely because the factual bases for an expert's opinion are weak." *Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717, 729 (6th Cir. 2012) (quotation marks and citations omitted).  Exclusion is the exception, not the rule, and "the gatekeeping function established by *Daubert* was never 'intended to serve as a replacement for the adversary system.'" *Daniels v. Erie Ins. Group*, 291 F. Supp. 3d 835, 840 (M.D. Tenn. Dec. 4, 2017) (quoting *Rose v. Matrixx Initiatives, Inc.*, No. 07–2404–JPM/tmp, 2009 WL 902311, at *7 (W.D. Tenn. March 31, 2009)) (other quotations omitted).  Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596. Rule 702 does not "require anything approaching absolute certainty." *Daniels*, 291 F. Supp. 3d at 840 (quoting *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671–72 (6th Cir. 2010)).

## IV.   ANALYSIS

Guided by the foregoing, the Court will turn to the present Motion.  Plaintiffs seek to exclude Phillips's opinions with respect to non-infringement, invalidity, and the article of manufacturer.  The Court will address these challenges separately.

### 1.   Non-Infringement

Plaintiffs argue that Phillips's opinion regarding non-infringement should be excluded for two primary reasons.  First, Plaintiffs state that under Rule 702, Phillips's opinion is irrelevant, unreliable, and/or of no assistance to the jury because Phillips in not an ordinary observer or

purchaser. Second, Plaintiffs contend that Phillips's testimony will be unfairly prejudicial because he is an expert proposing to testify as an ordinary observer or purchaser.

"A design patent protects the non-functional aspects of an ornamental design as shown in the patent." *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995). "The test for design patent infringement is whether an ordinary observer, familiar with the prior art, would be deceived into thinking that the accused design was the same as the patented design." *Rainworks Ltd. v. Mill-Rose Co.*, 622 F. Supp. 2d 650, 656 (N.D. Ohio 2009) (citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008)). "The ordinary observer is not an expert in design." *Dorman Prod., Inc. v. Paccar, Inc.,* 201 F. Supp. 3d 663, 683 (E.D. Pa. 2016), *as amended* (Oct. 17, 2016) (citing *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., Inc.*, 162 F.3d 1113, 1117 (Fed. Cir. 1998)), *overruled on other grounds by Egyptian Goddess*, 543 F.3d at 683; *see Gorham Mfg., Co. v. White*, 81 U.S. 511, 528 (1871) (explaining that the ordinary observer is an observer "of ordinary acuteness, bringing to the examining of the article upon which the design has been placed that degree of observation which men or ordinary intelligence give."); *Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314, 1323 (Fed. Cir. 2007) ("[T]he ordinary observer is a person who is either a purchaser of, or sufficiently interested in, the item that displays the patented designs . . .").

In the present matter, and as summarized above, Phillips explains that an "ordinary observer" or "ordinary purchaser" is typically a homeowner, who is considering purchasing and installing a swimming pool. [Doc. 46-1 at ¶ 66]. Phillips states that such individuals pay close attention to various design features and aesthetics of a pool because they will live with their decision for many years. [*Id.* at ¶ 69]. In paragraphs 141-158 of his expert report, Phillips discusses the similarities and differences and the impact on the viewer with respect to the parties'

17

pool designs. [*Id.* at ¶¶ 141-58]. For instance, he states that the parties' pool designs are both rectangular, they have a full-width tanning ledge in the shallow end, and benches in the deep end. [*Id.* at ¶ 143]. He continues, however, that Defendant's pool design has quarter-round steps at the corners of the tanning ledge and uniform steps between the tanning ledge and the rest of the shallow end. [*Id.* at ¶ 144]. The entry features in the North Star Patent are rectilinear and angular, which makes them stand out more than the curved entry features of Defendant's pool design. [*Id.* at ¶ 148]. Phillips states that "entry features are some of the most visually prominent features of just about every back-yard pool." [*Id.*].

In addition, with respect to the benches, Phillips states that the North Star Patent contains deep end benches that are rectilinear, angular, and multi-level, while Defendant's pool contains deep end benches that are smaller and "curved to blend in with the overall pool and are single level." [*Id.* at ¶¶ 144, 151]. He also opines that the deep end benches in the North Star Patent are proportionally larger than Defendant's deep end benches, meaning that Plaintiff's deep end benches stand out more. [*Id.* at ¶ 151].

Further, Phillips states that the design of Defendant's safety ledge is different than what is drawn in the North Star Patent. [*Id.* at ¶ 144]. He explains that while both parties' designs include a safety ledge that is incorporated into the walls of the pool, they are implemented differently, resulting in a prominent visual distinction. [*Id.* at ¶ 153]. Phillips states that with respect to the North Star Patent, the functional safety ledge is at the level of the tanning ledge and main level of the deep end benches so that it is not as visually noticeable as part of the overall design. [*Id.*]. With respect to Defendant's pool design, the safety ledge is much deeper and separated from the top level of the bench, making it more visually prominent in the overall design. [*Id.*].

Phillips also opines on the exteriors of the parties' pool designs but concludes that the exteriors are less important because they are not visible after installation. [Doc. 46-1 at ¶ 164]. Overall, Phillips opines that the design included in the North Star Patent "is much more rectilinear and angular." [*Id.* at ¶ 148]. Phillips concludes, "The two designs are clearly not substantially the same." [*Id.* at ¶ 155].

As mentioned above, Plaintiffs assert that Phillips is not qualified to offer any opinion as an ordinary observer and what an ordinary observer would believe to be important because he is an expert and not an ordinary observer. In a similar vein, Plaintiffs argue that pool designs are not overly technical or complicated and that, as defined by Phillips, the ordinary purchaser is a typical homeowner. Plaintiffs assert that the jury will include homeowners, and therefore, the jury can determine the similarities and infringement under the ordinary observer test.

The parties' filings have raised the following question before the Court: whether an expert may testify as to what an ordinary observer would observe. While the Court declines to create a blanket rule that expert testimony is always helpful in a design patent case, the Court finds that in this specific case, Phillips's factual testimony on infringement is helpful to the jury. Specifically, Rule 702 requires experts to have scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or determine a fact in issue. Phillips is an expert in pool design, and the Court finds his specialized knowledge in this field helpful to the jury in understanding the specific design features of pools. While the Court generally agrees with Plaintiffs' argument that pools are not overly technical or complicated, the Court finds Phillips's factual discussion of pool features and design aesthetics helpful, especially to a jury who may not be familiar with design features and aesthetics of a pool. *See Degelman Indus. Ltd. v. Pro-Tech Welding & Fabrication, Inc.*, No. 06-CV-6346, 2011 WL 6754051, at *2 (W.D.N.Y. May 27,

2011) (recommending that the expert be allowed to testify as the ordinary observer because "the ordinary consumer of the type of snow moving apparatus claimed in the Design Patents is more discerning than an average retail shopper"), *report and recommendation adopted*, No. 06-CV-6346T, 2011 WL 6752565 (W.D.N.Y. Dec. 23, 2011). The fact that Phillips is an expert designer does not change the Court's opinion because Phillips testified that he has forty-one (41) years of experience working with clients and that such consultations are fundamental to the design process. Thus, Phillips has experience working with the ordinary observer.

The Court finds the following case instructive, *Lanard Toys Ltd. v. Toys "R" Us-Delaware, Inc.,* No. 3:15-CV-849-J-34PDB, 2019 WL 1304290, at *1 (M.D. Fla. Mar. 21, 2019), *aff'd sub nom. Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337 (Fed. Cir. 2020). In *Landard Toys*, plaintiff sued defendant, alleging copyright, patent, trade dress and unfair competition over its toy chalk holder "designed to look like the ubiquitous no. 2 pencil." *Id.* at *1, 3. The parties retained experts to opine on patent and copyright infringement. *Id.* at *7. In addressing the parties' *Daubert* challenges, the court explained that the test for patent design infringement is the ordinary observer test. *Id.* The court questioned "whether the opinions and analysis of these experts in industrial design are in any way helpful to the fact-finder." *Id.* Nevertheless, the court declined to exclude the factual analysis of each expert, explaining that each expert describes his observations as to the similarities and differences between the prior art and the parties' products. *Id.* The court reasoned, "Unlike their ultimate conclusions, the factual analysis is helpful in that they provide the fact-finder with the terminology to describe the features and shapes which one observes when comparing these designs." *Id.*

Similarly, in *Delta T, LLC v. Dan's Fan City, Inc.*, the court addressed whether an expert's opinion on design patent infringement with respect to a ceiling fan would assist the trier of fact.

No. 8:19-CV-1731-VMC-SPF, 2021 WL 458022, at *7 (M.D. Fla. Feb. 9, 2021). The defendant challenged the expert's opinion, claiming that it would not assist the trier of fact because the opinion is conclusionary and expert testimony was not necessary. *Id.* at *5. The court disagreed, stating that "the patented designs and alleged infringing products are not so straightforward that [the expert's] testimony would be unhelpful to the jury." *Id.* The court continued, "Although it is true that the jury members would themselves be able to compare two objects to determine their similarity, it would help a jury to understand why certain designs might appear similar, and whether differences in designs actually impact their overall appearances." *Id.*

In the instant matter, Phillips's opinions can be distilled as follows: (1) the steps on Defendant's pool leading down to the tanning ledge are small, rounded, and discretely tucked into the corners of the pool, (2) the deep end benches on Defendant's pool are rounded to blend into the adjacent pool walls, (3) the deep end benches on Defendant's pool are smaller than Plaintiffs' pool and lack the additional steps on top, and (4) the location and configuration of the safety ledge on Defendant's pool make the safety ledge more prominent of the pool's overall aesthetic. [Doc. 46-1 at 72]. Phillips states that overall, Plaintiffs' pool is more rectilinear and angular and that Defendant's pool contains curved entry features. [*Id.* at ¶ 148]. Again, the Court notes that while pools in general are not overly technical products, the Court finds Phillips's opinions are helpful in pointing out the specific design features of a pool, which a jury may not be familiar.

While the Court finds Phillips's factual analysis helpful to the jury, the Court does not find his legal conclusions helpful. *Delta T*, 2021 WL 458022, at *5 (allowing an expert's factual analysis but excluding his legal conclusions); *Lanard Toys*, 2019 WL 1304290, at *7 (excluding both experts' ultimate legal conclusions on the issues of copyright and patent infringement). After reviewing Phillips's report, the Court finds that it contains a number of impermissible legal

conclusions. For instance, Phillips concludes that Defendant's pool design does not infringe on the '966 Patent, the '966 Patent does not cover Defendant's pool, Defendant's pool design is not substantially the same as Plaintiffs' design, and so forth. Such opinions are not helpful to the jury because they supplant the jury's role by simply instructing the jury how to rule. *Lim v. Miller Parking Co.*, 526 B.R. 202, 216 (E.D. Mich. 2015) ("Expert testimony that 'attempts to tell the jury what result to reach and which runs the risk of interfering with a district court's jury instructions, hardly can be viewed as being helpful to the jury.'") (quoting *Woods v. Lecureux,* 110 F.3d 1215, 1220 (6th Cir. 1997)) (other citations omitted); *Delta T*, 2021 WL 458022, at *5 (excluding expert from testifying that the ceiling fan infringes on plaintiff's design or that the parties' designs are substantially similar). Accordingly, the Court excludes Phillips's ultimate conclusions as they are not helpful under Rule 702.

Further, Plaintiffs argue that Phillips's comparison of the designs at issue and accompanying opinions on infringement should be excluded under Rule 403. Plaintiffs argue that allowing such opinions creates significant danger of unfair prejudice as the jury will provide credence to Phillips's opinions because he is the "the world's most influential swimming pool designer." The Court has already precluded Phillips from issuing ultimate conclusions, and therefore, Plaintiffs' concerns are somewhat alleviated. In addition, any concerns regarding the weight of Phillips's opinion can be addressed in a jury instruction as opposed to excluding Phillips's opinion in its entirety.

Finally, in their supplemental briefs, Plaintiffs argue that Phillips ignores similarities based on assertions of functionality, but Phillips does not understand the legal concept of functionality. The Court finds Plaintiffs' argument is better suited for cross examination. *Lanard Toys*, 2019 WL 1304290, at *8 ("Thus, even if [the expert] applied the wrong legal standard in arriving at his

ultimate determination of primary functionality, this does not undermine the reliability or relevance of [the expert's factual assessment.]").  Accordingly, the finds Plaintiffs' arguments well taken, in part.

### 2.    Invalidity

Plaintiffs assert that Phillips provides a brief and conclusionary opinion that the '966 Patent is invalid.  Plaintiffs argue that his conclusion is not supported by any substantive analysis in violation of Rule 26(a)(2)(B)(i) and that his conclusion is based on an incorrect legal standard. More specifically, Plaintiffs assert that Phillips does not address anticipation or otherwise identify any single prior design that is substantially the same as Plaintiffs' design claimed in the '966 Patent.  Plaintiffs argue that this alone should preclude Phillips from providing an opinion on anticipation at trial.  Plaintiffs state that the test for anticipation is the ordinary observer test, and therefore, for the same reasons as above, Phillips should be precluded from rendering an opinion on invalidity.

With respect to obviousness, Plaintiffs state that Phillips's opinion is unreliable, irrelevant, and unhelpful because he does not identify a primary reference and has not provided any analysis of how many of the purported prior pool designs could be a primary reference.   In their Supplemental Brief, Plaintiffs state that Phillips made it clear during his deposition that he is unfamiliar with patent law or the applicable legal standard for determining validity of a design patent.

With respect to Phillips not identifying a primary reference, Defendant responds that Plaintiffs fail to show how this constitutes grounds for exclusion or how such would render Phillips's opinion unreliable.  Defendant states that Phillips identifies all of the prior art that he considered along with his experience in pool design in forming his opinion.  Defendant asserts that

23

Plaintiffs' remaining challenges go to the weight of Phillips's opinions and not to their admissibility.

A patent may be invalidated if it is anticipated pursuant to 34 U.S.C. § 102(b) or obvious pursuant to 35 U.S.C. § 103. With respect to anticipation, such "requires a showing that a single prior art reference is identical in all material respects to the claimed invention." *MRC Innovations, Inc. v. Hunter MFG., LLP*, 921 F. Supp. 2d 800, 811 (N.D. Ohio 2013), *aff'd*, 747 F.3d 1326 (Fed. Cir. 2014) (quoting *Door–Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1312 (Fed. Cir. 2001)). "In other words, the two designs must be substantially the same." *High Point Design LLC v. Buyer's Direct, Inc.*, 621 F. App'x 632, 638 (Fed. Cir. 2015). "Substantially the same" means the "resemblance is such as to deceive [an ordinary observer], inducing him to purchase one supposing it to be the other." *Id.* (internal quotations omitted).

With respect to obviousness, "the ultimate inquiry . . . is whether a claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved." *MRC Innovations,* 747 F.3d at 1331 (internal quotations omitted). To answer this question, the court must determine "whether one of ordinary skill would have combined teachings of the prior art to create the same overall visual appearance as the claimed designed." *Id.* (quotations omitted). In addressing this question, "the court must identify a single reference, a something in existence, the design characteristics of which are basically the same as the claimed designed." *Id.* (quotations omitted). "Once the primary reference is found, other 'secondary' references may be used to modify it to create a design that has the same overall visual appearance as the claimed design." *Id.* (quotations omitted).

"Obviousness is a legal conclusion based on four general types of underlying facts which must be considered by the trier of fact: (1) the scope and content of the prior art; (2) the level of

24

ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) any objective indicia of no obviousness." *MRC Innovations*, 921 F. Supp. 2d at 805 (citing *Graham v. John Deere Co.,* 383 U.S. 1 (1966)) (the "*Graham"* factors).

In the present matter, Phillips opines, "[T]here are also many similar designs to the North Star Patents in the prior art. To the extent that the scope of the North Star Patents could be construed so broadly as to cover the Latham Pools, then the North Star Patents would necessarily be invalid as either not new or not non-obvious over earlier pool designs." [Doc. 46-1 at ¶ 175]. With respect to earlier pool designs, he explains that there are many examples of similar pool designs that predate the North Star Patents. [*Id.* at ¶ 76]. He states that generally, pools have a rectangular shape with a sloped bottom that gradually transition from a shallow end to a deep end. [*Id.* at ¶ 77]. In addition, some pools have full width, rectangular tanning ledges in the shallow end, with full width rectangular steps leading down to and down from the tanning ledge similar to the North Star Patent. [*Id.*]. He explains that tanning ledges, spas, and swim-out benches are common design features and that he has personally designed pools with such features. [*Id.* at ¶ 79]. He further states, "Perhaps the most distinctive design aesthetic of the North Star Patents' designs are the large, multi-level, right angled, deep end benches. I am not aware of any earlier pool designs that incorporate deep end benches that have the same aesthetic as the deep end benches of the North Star Patents." [*Id.* at ¶ 80]. He explains that he is aware of earlier pool designs that use single-level deep end benches with a more curved aesthetic that blend into the adjacent pool wall, similar to those of Defendant's pool. [*Id.* at ¶ 81]. Phillips then provides examples of earlier pool designs having similar overall appearances and/or specific design features to the parties' pools. [*Id.* at ¶¶ 82-140]. For instance, he reproduces images of pools and generally

25

comments that the pool in the image is rectangular and has certain features, such as steps, benches, and tanning ledges. [*Id.*].

Similar to the above reasoning, the Court finds Phillips's factual analysis helpful in the instant matter but not his ultimate legal conclusions. As the Federal Circuit explained, "Although obviousness is assessed from the vantage point of an ordinary designer in the art, an expert's opinion on the legal conclusion of obviousness is neither necessary nor controlling. That said, an expert's opinion may be relevant to the factual aspects of the analysis leading to that conclusion." *High Point Design,* 730 F.3d at 1314 (reversing the district court's decision to exclude the expert's declaration that related to a design patent for fuzzy slippers). Accordingly, in accordance with the above reasoning, the Court finds Phillips may discuss the prior art and its similarities with the design of the parties' pools but may not offer any legal conclusions (*e.g.,* North Star Patents would necessarily be invalid as either not new or not non-obvious over earlier pool designs."). [Doc. 46-1 at ¶ 175].

Further, Plaintiffs argue that Phillips's opinions are not in accordance with Rule 26(a)(2)(B)(i). Plaintiffs assert that Phillips did not explicitly state an opinion on anticipation. As mentioned above, however, any opinions on ultimate issues are not helpful and are inadmissible. In addition, Plaintiffs state that Phillips did not identify a single prior design as allegedly being substantially the same as Plaintiffs' design claimed in the Patent. Moreover, Plaintiffs argue that with respect to obviousness, Phillips also failed to identify a primary reference and failed to discuss whether any references are related to one another. A similar issue was addressed in *Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, No. 6:12-CV-33-ORL-28DAB, 2013 WL 12156465, at *14 (M.D. Fla. Jan. 4, 2013). In *Malibu*, plaintiff argued that defendant's expert failed to perform the requisite analysis for an obviousness opinion in a design patent case relating

to a marine windshield design because the expert did not cite a primary reference having design characteristics that are basically the same as the claimed design. *Id.* at *13. The court noted that defendant's expert mentioned prior art "without explicitly specifying which [was] primary, and which [was] secondary." *Id.* The defendant argued that its expert report was clear as to the characteristics shared by the prior art and the claimed design and that plaintiff could probe any weaknesses in the analysis through cross examination. *Id.* at *14. The court agreed and concluded, "[W]hile [the expert's] opinion on obviousness is not as clear as might be, he nonetheless does include prior art references in his opinion . . . and will be subject to cross examination on these opinions." *Id.*

In the instant matter, the Court will follow suit. As detailed above, Phillips describes prior art and discusses the characteristics shared with the '966 Patent. Plaintiffs may cross examine Phillips with respect to his factual analysis on invalidity. As previously stated, however, Phillips cannot testify as to any legal conclusions, such as Plaintiffs' Patent is invalid. Accordingly, the Court finds Plaintiffs' arguments well taken, in part.

### 3. Article of Manufacture

Plaintiffs argue that Phillips's opinion on the article of manufacture fails to provide any substantive analysis and is based on an incorrect legal standard. Plaintiffs argue that the article of manufacture is the entire swimming pool, but Phillips incorrectly concluded that the article of manufacture is the ledge, bench, and step components of the pool. Further, Plaintiffs submit that Phillips's opinion creates a significant danger of unfair prejudice because the jury would improperly breakdown the swimming pools into their individual components. In their supplemental brief, Plaintiffs contend that Phillips has limited knowledge regarding article of manufacture and that his deposition testimony is inconsistent with his opinions in his expert report.

27

Defendant states that Plaintiffs' arguments are based on mischaracterizations of the law and provide no basis for excluding Phillips's opinion. Defendant states that the Supreme Court rejected the argument that the term "article of manufacture" encompasses only the entire finished product sold to the consumers. Defendant states that Phillips's testimony will assist the fact finder in identifying the article of manufacturer.

A party who is found to infringe on a design patent is liable for the total profits resulting from the infringement. 35 U.S.C. § 289. Specifically, in relevant part, 35 U.S.C. § 289 provides as follows:

> Whoever during the term of a patent for a design, without license of the owner, (1) applies the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied shall be liable to the owner to the extent of his total profit, but not less than $250, recoverable in any United States district court having jurisdiction of the parties.

35 U.S.C.A. § 289. Thus, calculating damages under § 289 requires two steps. *Samsung Elecs. Co. v. Apple Inc.,* 137 S. Ct. 429, 434 (2016). The first step is to identify the article of manufacture which the infringed design has been applied, and the second step is to calculate the infringer's total profit made on that article of manufacture. *Id.* The Supreme Court held that the term "article of manufacturer" is broad enough to encompass both a product sold to a consumer as well as a component of that product." *Id.* at 435. While the Supreme Court explicitly declined to adopt a specific test to determine the article of manufacture, some courts have utilized a four-factor test to identify the article of manufacture. *Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2017 WL 4776443, at *11 (N.D. Cal. Oct. 22, 2017). These factors include as follows:

> The scope of the design claimed in the plaintiff's patent, including the drawing and written description;

The relative prominence of the design within the product as a whole;

Whether the design is conceptually distinct from the product as a whole; and

The physical relationship between the patented design and the rest of the product, including whether the design pertains to a component that a user or seller can physically separate from the product as a whole, and whether the design is embodied in a component that is manufactured separately from the rest of the product, or if the component can be sold separately.

*Id.* (internal quotations omitted); *Nordock, Inc. v. Sys., Inc.*, No. 11-CV-118, 2017 WL 5633114, at \*6 (E.D. Wis. Nov. 21, 2017) (explaining that the above factors are "appropriate, consistent with the relevant statutory law, and supported by the case law" but are not exclusive). "Identifying the article of manufacture is generally for the jury." *Nordock,* 2017 WL 5633114, at \*7.

In the present matter, Phillips states that depending on the facts of the case, the article of manufacture can be the entire product sold to a consumer or a component of the product. [Doc. 46-1 at ¶ 178]. Phillips explains that the concept of a rectangular pool was well known prior to the '966 Patent and that Plaintiffs cannot and do not claim that their '966 Patent covers rectangular pools in general. [*Id.* at ¶ 179]. Phillips states, for example, Defendant makes and sells other rectangular pools and that Plaintiffs have not accused Defendant of infringement with respect to Defendant's other pools. [*Id.*]. Phillips states that the '966 Patent claims a rectangular pool having certain components, including the ledge, bench, and step components as shown in the figures in the '966 Patent. Phillips concludes, "Therefore, it is my opinion that the article of manufacturer for the Corinthian 16 Pool is that pool's ledge, bench, and step components." [*Id.* at ¶ 181]. During his deposition, when asked if his conclusion was an accurate statement, he responded, "I think it's based on the relevance to article of—my understanding—limited understanding of article of

manufacture is that those are individual components that are ultimately put into a vessel." [Doc. 80-1 at 29].

As an initial matter, while the parties spend much time in their briefs arguing the proper definition of article of manufacture in this case, that issue is not before the Court. Plaintiff has filed a Motion for Partial Summary Judgment [Doc. 59], regarding what constitutes the article of manufacture, and the District Judge will rule on that motion. The matter before the undersigned is simply whether Phillips's opinion regarding the article of manufacture is admissible. In accordance with the above reasoning, Phillips may offer factual analysis on the article of manufacturer, but he is precluded from offering his opinion that the article of manufacture in this case constitutes the pool's ledge, bench, and step components. This decision is for the District Judge or the jury.

## V.  CONCLUSION

Accordingly, for the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion to Exclude Defendant's Purported Expert Harold Ray Phillips Jr.['s] Opinion Testimony [**Doc. 46**] and **DENIES AS MOOT** Plaintiffs' Motion to Exclude Report of Lauren Kindler [**Doc. 48**].

**IT IS SO ORDERED.**

ENTER:

*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge