UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| NORTH STAR TECHNOLOGY INTERNATIONAL LIMITED and NORTH STAR TECHNOLOGY LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>LATHAM POOL PRODUCTS, INC.,<br><br>Defendant. | No.: 3:19-CV-120-KAC-DCP |

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT LATHAM POOL PRODUCTS, INC.'S MOTION FOR SUMMARY JUDGMENT

This case is before the Court on "Defendant Latham Pool Products, Inc.'s Motion for Summary Judgment of Non-Infringement" [Doc. 64]. Because the overall ornamental appearance of Defendant's pool is "sufficiently distinct" from and "plainly dissimilar" to Plaintiff's design patent, the Court grants summary judgment to Defendant.

I. **BACKGROUND**[1]

A. **Plaintiffs North Star Technology International Limited and North Star Technology Limited and U.S. Design Patent Number D791,966**

Plaintiffs North Star Technology International Limited and North Star Technology Limited are "intellectual property holding companies for a world-wide family of entities commercially known as 'Leisure Pools'" [Doc. 75-1 ¶ 3 (Declaration of David J. Pain[2] ("Pain, D. Decl."))].

---

[1] Because Plaintiffs are the non-moving Parties, the Court describes the facts in the light most favorable to them. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).
[2] Pain is the President and CEO of Leisure Pools and Spas Manufacturing North America Inc. and Leisure Pools and Spas Distribution North America Inc. [Doc. 75-1 ¶ 2 (Pain, D. Decl.)].

Leisure Pools is the second largest manufacturer of fiberglass pools in the United States and manufactures and sells fiberglass pool shells covered by U.S. Design Patent Number D791,966 (the "D'966 Patent") under the trademark "The Pinnacle" [Doc. 75-1 ¶¶ 4, 8 (Pain, D. Decl.)]. Plaintiffs applied for the D'966 Patent on January 28, 2016 [Doc. 11-1 at 2]. The D'966 Patent, titled "Swimming Pool," was issued on July 11, 2017; it covers the ornamental design for a swimming pool [*Id.*]. The following figures are consistent with the D'966 Patent:



[Doc. 11-1 at 4-10].

As shown in the figures above, the D'966 Patent is for a rectangular pool with angular design features [*Id.*]. A rectangular entry step extends the full width of the pool and leads to a rectangular tanning ledge [*Id.*]. From the rectangular tanning ledge, the full-width steps leading into the main body of the pool differ in length, with the top step being longer than the bottom [*Id.*].

2

A rectangular bench is located in each corner of the deep end of the pool, with smaller rectangular steps stacked on top of each bench [*Id.*]. A safety ledge extends around the perimeter of the pool at the same level as the top surface of the tanning ledge and deep end benches [*Id.*].

### B. Defendant Latham Pool Products, Inc. and the Corinthian 16 Swimming Pool

Defendant Latham Pool Products, Inc. is the largest manufacturer of fiberglass pools in the United States [Doc. 75-1 ¶ 8]. Defendant manufactures and sells the "Corinthian 16"[3] fiberglass swimming pool [Doc. 14 ¶ 6]. The following figures are consistent with the Corinthian 16 design:



[Doc. 67-9 at 2-8].[4]

---

[3] Plaintiffs allege that Defendant's Corinthian 16, "Seahaven," and "Solara" pools all violate Plaintiffs' patent [*See* Doc. 11-3 at 2]. Those pools have the same design, so the Court refers to them collectively as "Corinthian 16" [*See id.*; Doc 11 ¶ 16].

3

The Corinthian 16 is a rectangular pool with curved edges and design features [*Id.*]. Two curved corner entry steps that do not extend the full width of the pool lead to a tanning ledge [*Id.*]. The tanning ledge extends the full width of the pool, and the edges of the tanning ledge curve into the walls of the pool [*Id.*]. From the tanning ledge, the full-width steps leading into the main body of the pool are each equal in length [*Id.*]. A curved bench is located in each corner of the deep end of the pool, but neither bench features steps [*Id.*]. A safety ledge extends around the pool at the midway point of the deep end benches and terminates at the pool floor at the bottom of the full-width steps leading into the main body [*Id.*].

### C. Prior Art

The swimming pool, of course, was not invented on January 28, 2016. Prior to January 28, 2016, when Plaintiffs filed the D'966 Patent, various other swimming pool designs were already publicly available. Defendant identified existing swimming pool designs, including rectangular pools with rectangular tanning ledges. A swimming pool designed by Brian Van Bower in 2007, pictured below, has similarities to the D'966 Patent [Doc. 67-3 (Declaration of Brian Van Bower)].

---

[4] Plaintiffs argue that Defendant may not properly rely upon drawings of the Corinthian 16 to satisfy its burden of establishing that no genuine dispute of material fact exists [Doc. 75 at 9]. Plaintiffs specifically argue that Defendant must compare the D'966 Patent drawings to the Corinthian 16 itself, not drawings depicting the Corinthian 16 [Doc. 75 at 10]. However, Plaintiffs fail to cite any authority for that proposition, and the law suggests the contrary. *See, e.g., Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1292, 1295-96 (Fed. Cir. 2010) (comparing patent figures to drawings of accused design); *Dyson, Inc. v. SharkNinja Operating LLC*, No. 14-CV-779, 2018 WL 1906105, at *13 (N.D. Ill. Mar. 29, 2016) (same). In any event, photographs of the Corinthian 16, [*see* Docs. 67-10–67-29], confirm the accuracy of the above drawings.



[Doc. 66 at 17]. A YouTube video[5] published by "Master Pools Guild" on August 4, 2013 (a screenshot of which is captured below) shows a rectangular pool with a rectangular tanning ledge [Doc. 66 at 17-18 (citing Master Pools Guild, *Pool Tron 2012*, YOUTUBE (Aug. 4, 2013), https://www.youtube.com/watch?v=_l0g3DU2Wuo)].



Before January 28, 2016, rectangular swimming pools with a rectangular tanning ledge and rectangular steps were also publicly available [Doc. 66 at 18-21]. The below screenshots provide just some examples.

---

[5] The Parties stipulated all YouTube videos cited herein to be "authentic and admissible subject to any potential relevancy objections for all purposes" [Doc. 67-2 at 3].

5



[Doc. 66 at 18-20 (citing Eddy Smith, *Sun ledge vinyl liner pool renovation*, YOUTUBE (Aug. 4, 2014), https://www.youtube.com/watch?v=tN4hsi73Waw)].



[Doc. 66 at 20 (citing Coral Pool, *Coral Pool Construction, Inc.*, YOUTUBE (Sept. 5, 2008), https://www.youtube.com/watch?v=6E4ux4yOebI)].

6



[Doc. 66 at 21 (citing Precision Pool Construction, *Vinyl Liner Pool With SpaDeck and Waterfall in Danvers Ma*, YOUTUBE (Aug. 21, 2012), https://www.youtube.com/watch?v=opqYDN3Lll0)].

And the record reveals that a design for a rectangular pool with a rectangular tanning ledge and deep end benches was also publicly available before Plaintiffs filed their patent [*See* Doc. 66 at 21-24]. Images of some of those designs are below.



[Doc. 66 at 22 (citing Coral Pool and Spa San Jose, Ca, *Rectangular Pool and Spa with Auto Cover, Baja Ledge, and Swim Outs*, YOUTUBE (July 16, 2015), https://www.youtube.com/watch?v=KN99-WDGpD4)].

 

[Doc. 66 at 23-24 (citing All Aqua Pools – New Smyrna Beach, *Modern Pool with Sun Shelf*, YOUTUBE (Oct. 21, 2013), https://www.youtube.com/watch?v=GCOpXWK9v8M)].

7



[Doc. 66 at 23 (citing 3D Pool Designs by FS Landscaping Contractors, *Rectangle Pool Design*, YOUTUBE (Sept. 16, 2013), https://www.youtube.com/watch?v=NdE2zONM3Ok)].



[Doc. 66 at 24 (citing Chaz Connell, *RL Pool with Large Beach Step*, YOUTUBE (Nov. 30, 2015), https://www.youtube.com/watch?v=orJzYhEm1iM)].

Some of Defendant's own pools produced before January 28, 2016 featured rectangular shapes, tanning ledges, steps, and deep end benches [Doc. 66 at 24-26]. In fact, as shown below, two of Defendant's prior swimming pool designs featured similar deep end bench and safety ledge designs as the Corinthian 16 [Docs. 65 at 9; 67-9; 67-37; 67-39].



8

And the designer of Plaintiffs' D'966 Patent admits that rectangular pools with tanning ledges, steps, and deep end benches existed before the D'966 Patent was filed [Doc. 67-7 at 8-9 (Deposition of Kerry Robert Pain ("Pain, K. Dep."), 23:23-24:1, 24:10-25:7, 28:6-16)].

### D. Procedural History

Plaintiffs initially filed this patent infringement suit in April 2019 [*See* Doc. 1]. Plaintiffs asserted two counts against Defendant: one for a declaration of infringement of the D'966 Patent (Count One) and one for a declaration of infringement of U.S. Design Patent Number D794,213 (Count Two) [*See* Doc. 11]. Defendant answered, asserting counterclaims for declarations of non-infringement on both patents [*See* Doc. 36 at 10, 18]. On June 18, 2020, Plaintiffs dismissed Count Two and Defendant dismissed its corresponding counterclaim [*See* Doc. 58]. Accordingly, only the D'966 Patent remains at issue in this action.

Defendant filed the instant "Motion for Summary Judgment of Non-Infringement," [Doc. 64], and a "Memorandum of Law in Support," [Doc. 65]. Defendant argues that it is entitled to summary judgment because (1) "the appearance of the Corinthian 16 is 'plainly dissimilar' from the [D'966 Patent]" design, especially considering prior art; and (2) "any similarities that do exist between the [D'966 Patent] and Corinthian 16 designs stem from their use of design elements that were commonly used in pool designs before the [D'966 Patent]" [Doc. 65 at 2]. Plaintiffs respond that Defendant's "arguments focus on insignificant differences in isolation and ignore[] the critical issue of whether the designs, when viewed in their entireties, are deceptively similar pursuant to the ordinary observer test," asserting that "it is clear that the significant features of the two designs are virtually identical such that the two pools share the same overall distinctive look" [Doc. 75 at 1, *sealed]. The Court held a hearing on the Motion, and the matter is ripe for adjudication.

9

II.     APPLICABLE LAW

   A. **Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the facts in the light most favorable to the non-moving party and make all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Nat'l Satellite Sports, Inc.*, 253 F.3d at 907. The moving party bears the burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party has met this burden, the opposing party cannot "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 586; Fed. R. Civ. P. 56). "A genuine issue for trial exists only when there is sufficient 'evidence on which the jury could reasonably find for'" the non-moving party. *See Nat'l Satellite Sports, Inc.*, 253 F.3d at 907 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson*, 477 U.S. at 247-48).

   B. **Patent Infringement**

"When presiding over a patent case, a district court applies 'the law of the circuit in which the district court sits' to non-patent issues and the law of the Federal Circuit 'to issues of substantive patent law and certain procedural issues pertaining to patent law.'" *Ford Motor Co. v. Versata Software, Inc.*, No. 15-11624, 2015 WL 5968754, at *2 (E.D. Mich. Oct. 14, 2015)

10

(quoting *In Re Cambridge Biotech Corp.*, 186 F.3d 1356, 1368 (Fed. Cir. 1999)); *see also In re Queen's Univ. at Kingston*, 820 F.3d 1287, 1290 (Fed. Cir. 2016). Federal Circuit law is, therefore, applicable to the bulk of the Court's inquiry here.

"Design patents have almost no scope." *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988). "The claim at bar, as in all design cases, is limited to what is shown in the [design patent] application drawings." *Id.* "Infringement is a question of fact . . . and must be proved by a preponderance of the evidence" by the party alleging infringement. *See High Point Design LLC v. Buyer's Direct, Inc.*, 621 F. App'x 632, 640 (Fed. Cir. 2015) (citing *Lockheed Martin Corp. v. Space Sys. / Loral, Inc.*, 324 F.3d 1308, 1318 (Fed. Cir. 2003); *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008)). "Summary judgment of non-infringement is appropriate when no reasonable fact-finder could find the accused design [the design that is allegedly infringing on a design patent] substantially similar to the claimed design [the design for which a party holds a design patent]." *Id.* at 640-41 (citing *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1578 (Fed. Cir. 1995)).

In determining whether an accused design infringes a design patent, the Court applies the "ordinary observer" test. *See Egyptian Goddess*, 543 F.3d at 678. Under this test, a design patent is only infringed "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other." *Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871). Typically, the "ordinary observer" is the purchaser of the item. *Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314, 1324 (Fed. Cir. 2007), *abrogated on other grounds by Egyptian Goddess*, 543 F.3d 665 (Fed. Cir. 2008). Here, the Parties agree that

11

the "ordinary observer" is "a homeowner that is considering purchasing and installing a swimming pool at their home" [*See* Doc. 111].

"The ordinary observer test applies to the patented design in its entirety." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010) (citing *Braun, Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 820 (Fed. Cir. 1992)). This includes the "overall ornamental visual impression, rather than 'similarities of ornamental features in isolation.'" *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015). "[T]he aggregation of [ornamental] differences can create a distinct overall visual impression and overwhelm the similarities between the designs." *Minka Lighting, Inc. v. Maxim Lighting Int'l, Inc.*, No. 3:06-CV-995-K, 2009 WL 691594, at *6 (N.D. Tex. Mar. 16, 2009). A "proper comparison requires a side-by-side view of the drawings of the patent design and the accused products." *Crocs, Inc.*, 598 F.3d at 1304.

"[W]here the claimed design and the accused design are 'sufficiently distinct' and 'plainly dissimilar,' the patentee does not meet its burden of proving infringement." *High Point Design*, 621 F. App'x at 641 (quoting *Egyptian Goddess*, 543 F.3d at 678). But even where the Court is satisfied that an "accused design [is] readily distinguishable to an ordinary observer, a full analysis may include 'a comparison of the claimed and accused designs with the prior art,'" that is, other designs that were in existence at the time the patent was filed. *See Minka*, 2009 WL 691594, at *6 (quoting *Egyptian Goddess*, 543 F.3d at 678). In assessing whether an ordinary observer would consider two designs to be substantially the same, "[t]he context in which the claimed and accused designs are compared, i.e., the background prior art, provides . . . a frame of reference and is therefore often useful in the process of comparison." *Egyptian Goddess*, 543 F.3d at 677. Prior art designs "can highlight the distinctions between the claimed design and the accused design." *Id.*

12

"[I]f the accused infringer elects to rely on the comparison art as part of its defense against the clam of infringement, the burden of production of that prior art is on the accused infringer." *Id.* at 678. But even if the accused infringer presents evidence of prior art, "the ultimate burden of proof to demonstrate infringement by a preponderance of the evidence" rests with the party, or parties, alleging infringement. *See id.* at 679.

III. **ANALYSIS**

Here, Defendant is entitled to summary judgment of non-infringement because to the ordinary observer, the Corinthian 16's overall ornamental appearance is "sufficiently distinct" from and "plainly dissimilar" to the D'966 Patent. *See High Point Design*, 621 F. App'x at 641 (quoting *Egyptian Goddess*, 543 F.3d at 678). Beginning with the overall design, as shown in the below comparison images, "the patented and accused designs bring to mind different impressions." *See id.*



D'966 Patent [Doc. 11-1 at 8]

13



The D'966 Patent design is angular in appearance [*Id.*]. But the Corinthian 16 design is curved [*Id.*]. The D'966 Patent is based on geometric shapes—namely, rectangles. By contrast, the Corinthian 16 includes curved, rounded shapes. Both designs consist of a roughly rectangular pool with a tanning ledge, full-width stairs, and deep end benches, but these "high-level similarities" "are not sufficient to demonstrate infringement." *See High Point Design*, 621 F. App'x at 642 (citing *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1332 (Fed. Cir. 2012) (finding error where district court looked to "general concept" of a tablet, as opposed to the distinctive "visual appearance" of the claimed design); *Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 104 (Fed. Cir. 1996)). The visual appearance of the Corinthian 16 is distinct with rounded and curved edges to the entry steps, tanning ledge, steps entering the body of the pool, and benches [*See* Doc. 67-9 at 6].

Further, the individual design features of the D'966 Patent and the Corinthian 16 are noticeably different, working in concert to create a substantially different overall ornamental appearance. *First*, the D'966 Patent has one rectangular full-width entry step, while the Corinthian 16 has two separate curved entry steps in the corners of the pool. These differences are highlighted in the below side-by-side comparison.

14



The inventor of the D'966 Patent design, himself, acknowledged the distinct visual impression created by the D'966 Patent's entry step design:

> Q: Okay. And just so I understand your testimony, you also extended the entry step to be the width of the pool because that looked better to you as well; right?
>
> A: It did.
>
> Q: Okay.
>
> A: *It looked more in balance with the other steps* . . . if you're going to put your other steps all of the way across, then you might as well do the other one all of the way across to make it look more in balance.

[Doc. 67-7 at 18 (Pain, K. Dep., 64:21-65:6) (emphasis added)].

*Second*, the steps leading from the tanning ledge into the main body of the pool are also significantly different. In the D'966 Patent design, the steps are two different lengths, while the

15

steps in the Corinthian 16 design are equal in length. These differences are highlighted in the below comparison.



***Third***, the benches in the deep end of the two designs are plainly dissimilar. The D'966 Patent design includes rectangular benches with smaller rectangular steps stacked on top. In contrast, the Corinthian 16's benches are curved with no steps. These differences are shown below.



***Finally***, the location and depth of the safety ledge differs between the two designs. The safety ledge of the D'966 Patent extends around the perimeter of the pool from the top of the main

16

pool entry steps. In contrast, the safety ledge of the Corinthian 16 is positioned deeper in the pool, starting at the bottom of the main pool entry steps. The below graphic illustrates that difference.



| D'966 Patent | Corinthian 16 [Doc. 66 at 20] |
|---|---|

The inventor of the D'966 Patent chose the location of the safety ledge as "a design feature" to improve overall "flow" of the design elements of the pool so it "looks good" [Doc. 67-7 at 16 (Pain, K. Dep., 54:5-19)]. Indeed, the safety ledge's design impacts the overall design appearance.

As the drawings show, prominent ornamental elements of the two designs differ significantly, creating an overall "plainly dissimilar" appearance. *See High Point Design*, 621 F. App'x at 641 (quoting *Egyptian Goddess*, 543 F.3d at 678). Plaintiffs argue that these differences are "insignificant" [*See* Doc. 75 at 19]. But these individual differences, acting in concert, have a substantial impact on the overall appearance of the designs. *See High Point Design*, 621 F. App'x at 641 (quoting *Egyptian Goddess*, 543 F.3d at 678). No "ordinary observer"—a homeowner considering purchasing a swimming pool for their home—would mistake the angular D'966 Patent design with the curved Corinthian 16 design.[6]

---

[6] Plaintiffs argue that an Instagram post in which Boyer Mountain, a retail establishment selling pools, identified an image of Plaintiffs' "The Pinnacle" model (the commercial embodiment of the

An evaluation of the prior art confirms this understanding. Each of the pertinent design elements included in the D'966 Patent and Corinthian 16—from the entry steps to the deep end benches—existed before Plaintiffs filed the D'966 Patent. Where, as here, "the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer." *Egyptian Goddess*, 543 F.3d at 678. The small differences, and large differences, between the D'966 Patent and Corinthian 16 are likely to be important to the eye of a homeowner considering purchasing a swimming pool for his or her home. *See id.* And these important differences feed into the overall ornamental design of each pool, which is distinct. "[A] patented design that consists only of bringing together old elements with slight modifications of form is not infringed by another who uses the same elements with his own variations of form . . . if his design is distinguishable by the ordinary observer from the patented design." *Minka*, 2009 WL 691594, at *6 (cleaned up). Because no reasonable juror could conclude that the Corinthian 16 is "substantially similar" to the D'966 Patent, Defendant is entitled to summary judgment.

## IV. CONCLUSION

For the reasons above, the Court **GRANTS** "Defendant Latham Pool Products, Inc.'s Motion for Summary Judgment of Non-Infringement" [Doc. 64]. No claims remain in this action. An appropriate judgment shall enter.

IT IS SO ORDERED.

KATHERINE A. CRYTZER
United States District Judge

---

D'966 Patent) as Defendant's Corinthian 16 shows that an ordinary observer would mistake the Corinthian 16 for the D'966 [*See* Doc. 75 at 18]. But Boyer Mountain is not representative of the "ordinary observer"—a homeowner seeking to purchase a pool. And there is no evidence that this post was made to intentionally mislead consumers.

Case 3:19-cv-00120-KAC-DCP   Document 112   Filed 06/06/23   Page 18 of 18   PageID #: 3439